NEAL v. NOVELTY LEATHER WORKS.

1. EVIDENCE—ADMISSIBILITY—TESTIMONY ON FORMER TRIAL.

Evidence *held*, not to show that plaintiff's illness was so severe and of such permanent character that he could not testify so as to render admissible his evidence in another case as to the validity of the claimed contract involved in each case.

2. SAME—COMPETENCY—CORPORATIONS—OFFICERS—ADMISSIONS.

Statements and admissions of the president and general manager, and the treasurer of a corporation, who constitute a majority of the directors and are both officially and actively engaged in the business, relative to the existence of a contract with plaintiff, are competent evidence, in a suit against the corporation by an agent for an accounting as to commissions on goods sold.

3. CORPORATIONS — OFFICERS — AUTHORITY TO MAKE AGENCY CONTRACT.

Evidence *held*, to show that the president and general manager of defendant corporation had authority to make an agency contract.

Appeal from Wayne; Codd, J. Submitted June 22, 1917. (Docket No. 137.) Decided December 27, 1917.

Bill by William C. Neal against the Novelty Leather Works and another for an accounting. From a decree for plaintiff, defendants appeal. Affirmed.

*Arthur E. Fixel,* for plaintiff.

*Thomas W. Payne,* for defendants.

STEERE, J. The Novelty Leather Works is a Michigan corporation located in the city of Jackson, engaged in the manufacture and sale of leather goods and novelties of various kinds, including certain automobile appliances. During the time of the events involved in this litigation, it had four stockholders and three directors, of whom defendant Collins was president and general manager, and John Bennett treasurer.

Defendant Collins had secured a patent, or patent rights, for an invention called the "Collins Always Ready," or "Quick Action," curtain, designed to facilitate the manner of holding automobile curtains on the inside and convenience in using them, the rights and equitable ownership of which belonged to the Novelty Leather Works.

Plaintiff was a so-called "manufacturer's agent," engaged in the sale of automobile material and accessories with his office in the city of Detroit. In the summer of 1912, as defendants were about to put this device upon the market, plaintiff became interested and participated, in an agency capacity, in its promotion, on whose initiative and to what extent is a matter in dispute. Plaintiff claims that on Collins' solicitation he entered into an agreement with defendants in the fall of 1912 to act as their general agent in promoting and assisting in the sale of this device and licenses to use it, in consideration for which he was to receive 10 per cent. of defendants' receipts from the sales of the appliance and royalties from licenses to automobile

manufacturers for its use; that in fulfillment of the agreement on his part he did, as stated in his bill of complaint for an accounting—

"assist the said defendants in the sale of said device and licenses, and did provide stenographic service, service with correspondents, distribution of printed matter, and the use of his office for said defendant, the Novelty Leather Works, and that a large number of circular letters soliciting trade by mail were sent out by your orator, in performance of his part of said contract. That your orator likewise solicited business, personally calling on automobile manufacturers, and that, as a result of the efforts of your orator working in conjunction with said defendant, the Novelty Leather Works, a large amount of business was secured for the said automobile curtain device."

Defendants deny any contract of general agency; and, in explanation of plaintiff's admitted relations with them, claim that, when in Jackson showing defendants the merchandise he was handling, plaintiff was impressed with the merits of their curtain device and said he could place it with the General Motors Company, of which his brother was president; that on this proposal it was agreed that if he could accomplish it defendants would pay him 10 per cent. commission on the deal; that the only transaction then talked about was a license to the General Motors for use of the patent, of which Collins testified:

"He was to consummate the sale, go to the officials and complete the arrangement for the demonstration, and I was to put the—I was to demonstrate the curtain and make it and put it on, and he was to close the deal.
"Q. What were you to pay him for that?
"A. Ten per cent."

Collins also testified that up to this time they were furnishing the device on tops they were making without extra charge and had "no idea of the selling as a license proposition" until plaintiff brought it up, and

Collins then told him "if he could do that" they would pay him 10 per cent. for such sales as he actually consummated, "would furnish literature and give him an opportunity to make the sales." Asked of the termination of their relations in the latter part of 1913, "Why did you dismiss Mr. Neal or sever your connection with him?" Collins replied:

"There were two reasons, one was that, when the Cadillac Motor Car Company started to evade our patent by certain methods, I discovered the evasion when they had 1,500 cars out, and some time later Mr. Neal apparently was giving my affairs very little attention."

Plaintiff's claim and alleged grounds for equitable relief are, briefly stated: That he advertised the curtain by personal interviews and correspondence and assisted in the solicitation of patronage from many automobile companies doing business in Michigan and elsewhere, until, largely as the result of his activities while its general agent, defendants realized a profitable business in this patented device with numerous automobile manufacturers; when defendants refused to recognize his contract of employment as general agent or his services in that behalf, declined to pay the money due him under said contract, refused to furnish him any statement, and denied his right to information from or inspection of their books to ascertain upon what sales and royalties they owed him commissions, charging that they have been withheld from him and the desired information concealed for the purpose of defeating his claim and defrauding him out of his just compensation amounting to a sum largely in excess of $500, for which reasons he prays an accounting, an adjudication and adjustment of his rights, and a decree for such sum as may be found his due.

At the hearing oral and documentary evidence was introduced, including a large amount of correspond-

ence with different automobile concerns and between the parties to this suit, indicating, amongst other things, individual efforts on plaintiff's part as well as active co-operation between him and defendants to promote the business; Collins frequently writing him on the subject with instructions to follow up prospective customers, "get busy," "get circulars off at once," etc. After testimony had been introduced by both parties leading up to and upon the question of plaintiff's right to an accounting, the trial court held, "without any prejudgment of the case at the present time, that an accounting should be had of all the business that was done by the defendant company in these curtains up to October, 1913," and made an order of reference to a circuit court commissioner of Jackson county for that purpose. Upon return of the report and testimony taken by such commissioner, the court found that a contract existed between the parties as plaintiff claimed, that upon undisputed sales during the period in question plaintiff's commissions of 10 per cent. amounted to $223.80, and decreed judgment in his favor for that sum, with costs.

Defendants in appealing from this decree urge that the following four vital questions were erroneously disposed of by the trial court adverse to their rights:

"(1) Whether or not the plaintiff has failed to prove, by a preponderance of evidence, a contract of agency between plaintiff and defendants, or either of them?

"(2) That if any contract of agency did exist between plaintiff and defendants or either of them, was it a special agency, and not a general agency?

"(3) Did defendant Collins have authority to bind the Novelty Leather Works by a contract of agency?

"(4) After all improper, incompetent, irrelevant, and immaterial evidence is excluded, has the plaintiff proven his case by a preponderance of the evidence?"

Plaintiff was not called as a witness nor present at

the hearing, owing, as was claimed, to a serious illness and nervous disorders; his physician who testified to his condition and the history of his case at length saying, in part:

"As a matter of fact, I don't think he will ever be able to testify without serious injury to himself * * * I don't think he will (be able to testify again), because any little excitement upsets him; he is liable to a relapse and a loss of memory at any time, from every exertion."

Upon this showing plaintiff's counsel offered, and defendants' counsel objected to, plaintiff's testimony taken upon the trial of a case in justice's court, on December 16, 1913, between himself and the Novelty Leather Works, wherein he testified in detail as to the validity of the claimed contract involved here. The court intimated misgivings as to the admissibility of this testimony and received it tentatively, inviting authority from plaintiff's counsel, and saying, "I do not conceive how I could consider such testimony in my final determination in this case." In the final determination the court announced the opinion that this testimony was incompetent and that neither it nor certain other hearsay testimony which had been offered would be taken into consideration in deciding the case; but, eliminating all such testimony, the court was satisfied from the correspondence and other competent evidence that the contract claimed for plaintiff had been proven, and he was entitled to the decree rendered.

Authorities are cited and argument offered in the briefs of counsel upon each side as to the admissibility of Neal's former testimony; plaintiff's counsel contending that it is admissible but, if not, the decree is sustained by other competent evidence, while defendants' counsel urge that it was rightly rejected, and without it the decree is not sustained by competent proof. We do not think the testimony satisfactorily

showed plaintiff's illness was so severe and of such permanent character as to warrant the admission of his former testimony, and for that, if no other reason, it was properly excluded. *Siefert* v. *Siefert,* 123 Mich. 664 (82 N. W. 511).

As to Collins' authority to bind the Novelty Leather Works, we think it conclusively shown that, not only was his action in the particular under inquiry ratified by a majority of the directors of the corporation, but as its president and general manager such action was within the scope of his authority. *Ceeder* v. *Lumber Co.,* 86 Mich. 541 (49 N. W. 575, 24 Am. St. Rep. 134). He and Bennett, the treasurer, constituted a majority of the directors and both were actively connected with the affairs of the company in official capacities; their statements and admissions in that capacity and connection would be competent evidence.

In the course of the company's business, Bennett, one of its directors, wrote plaintiff on October 17, 1913, using a letter head of the Novelty Leather Works showing him to be its secretary and treasurer, in part as follows:

"We have your letter of the 16th, which is carefully noted. * * * My understanding of the matter is as follows: That the arrangement between you and Mr. Collins was that you were to assist him in presenting and demonstrating the curtain, and in securing its adoption by the various automobile manufacturers, and that for your services, and the use of your office and so forth, you were to receive ten per cent. of the net amount received for the licenses. * * * Otherwise I see no reason why it should not be continued, but in any case, I see no reason why we should pay you commission on royalties received and also payment for office rent, use of your car, etc."

William Paul, a former employee of defendants, testified that in a conversation with Collins in June, 1912, in regard to the curtain device,

"he (Collins) told me he had been out on the road and was not quite satisfied and was going to get Mr. Neal as general agent on a 10 per cent. basis he said."

Allen Neal, plaintiff's son, testified that after Collins and his father had severed relations he talked with the former about their matters, and in that conversation

"he told me that he used to go around with him a good deal, and I asked him what kind of an arrangement he had with father, and he told me father was to get 10 per cent. on all business; he was a general agent and he was to get 10 per cent. on the receipts."

We think the foregoing testimony as to statements and admissions of the president and general manager of the company were competent, that from such testimony in connection with the written evidence in the case the trial court was fully justified in the conclusions reached, which we discover no occasion to disturb.

The decree is affirmed, with costs to plaintiff.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, BROOKE, and FELLOWS, JJ., concurred.