HANES, Administratrix, Appellant, vs. HERMSEN, Respondent.

*April 6—May 12, 1931.*

*Allan V. Classon* of Oconto, for the appellant.
*John B. Chase* of Oconto, for the respondent.

FAIRCHILD, J.  The driver of a car approaching children at play in or near the traveled highway is charged with the duty of taking reasonable precautions to avoid injury to any of them resulting from the operation of his automobile. *Ruka v. Zierer,* 195 Wis. 285, 218 N. W. 358.  As was said in that case by Mr. Justice OWEN covering a somewhat similar situation: "It did hold him to the exercise of a high degree of care.  From that time their safety should have been the subject of his anxious solicitude until he had safely passed them.  He was charged with a knowledge of childish traits.  To hold him to an anticipation that some one of them, in the course of their play, might suddenly dart out into the street, is not at all unreasonable."  This measure for the conduct of the respondent in this case was applied by the trial court.

The respondent in the city of Oconto, driving north on Smith avenue near the intersection of that avenue with McDonald street on the 13th of October, 1929, noticed when he was some one hundred feet or less from them three children near a hydrant which stood a few feet from the southeast corner of this intersection.  At the trial he testified that he was about fifty feet away when he first noticed the chil-

dren and admitted to having testified before the coroner a few days after the accident as follows: "When I came within about one hundred feet of the Le Comte store or corner I noticed three children standing along the curb." He further said: "I did not notice that these children were playing tag before I struck Francis Hanes. They were standing still before that. They did not appear to be playing tag. The statement that I signed says: 'When I got within a distance of approximately twenty feet it appeared to me they were playing tag. . . . When it appeared to me twenty feet away that they were playing tag, I slowed up and the next instant the boy was in front of the car.'" There is testimony supporting the claim that respondent was driving at the rate of about fifteen miles an hour when he first noticed the boys; that when he saw they were playing tag he was traveling about ten miles per hour. From this it appears that respondent's car was under control and that as he proceeded plaintiff's decedent, a child of seven years and ten months of age, engaged in play, ran into the road not looking in defendant's direction, taking such a course that his path met the path of the machine. The width of the street at this point is thirty-one feet. Respondent's left wheels were about two feet east of the center, so that, considering the width of his automobile, there were but seven or eight feet between the right side of the car and the curb. Over this narrow space the child ran and the collision occurred. The evidence shows the respondent stepped on the brakes, turned to the left; that in an instant the boy was hit by the right front fender and headlight.

The case was submitted under instructions which correctly and sufficiently informed the jury of the responsibility resting upon the respondent and the degree of care he was required to use for the safety of children situated as this child was, and the court in his instructions covered the matter contained in the requests made by appellant.

The evidence sustains the findings of the jury to the effect that respondent was driving at a reasonable speed, that he maintained a proper lookout, that he was not negligent in failing to sound his horn and not negligent in failing to stop his automobile. It appears his brakes were in good condition and lights on. A jury question existed as to each of these items under the evidence, and unless error prejudicial in its nature exists in the rulings of the court the verdict must be accepted. The appellant calls attention to the charge and points out his requested instructions challenging the sufficiency of the instructions on the question of negligence, and cites *Osborne v. Montgomery,* 203 Wis. 223, 234 N. W. 372. The instructions referred to a standard and are not subject to the criticism aimed at them. The jury were told that it was the duty of the respondent, in the exercise of ordinary care under the circumstances of this case, when he approached the corner and observed children standing or playing near the curb line and the sidewalk, "to take that fact into consideration in maintaining a lookout and otherwise operating his automobile, after he had so observed the children, so that he might avoid injury to any of them that might run across the street." The jurors were also reminded that it was a matter of common knowledge that children ordinarily used the streets as a playground and at unexpected moments ran across that portion of the street used by automobiles.

Appellant directs our attention to the language used in a portion of the instructions wherein the court said: "You will bear in mind that this accident happened about twenty minutes to seven and the lights of defendant's automobile shining ahead of him were in themselves some warning of the approach of defendant's automobile," and urges that it contains a statement of fact and in some measure was an invasion of the province of the jury. It is conceded that the defendant did not blow his horn. The jury would be en-

titled, in passing upon the question as to whether or not his failure to do so was negligence, to consider all the circumstances which might have influenced him to do the things he did and leave undone the things he did not do. The jury were also told:

"The law is that 'every automobile, while being used upon any public highway of the state, shall be provided with efficient brakes and an adequate bell, horn or other signaling device.' While there is no rule of law which requires the driver of an automobile to sound his horn in approaching an intersection, or pedestrian upon the highway, a failure to properly and seasonably warn by the sounding of a horn may, under certain circumstances, be negligence. It will be for you to determine whether, under the circumstances in this case, a timely sounding of the horn would have tended to avoid the injury in this case."

We do not find in these assignments of error anything which would warrant disturbing the judgment entered. In each of the instances as already suggested, where plaintiff requested instructions the court covered the matter referred to in an adequate manner and no prejudicial error occurred.

Appellant sought to show that the corner near which the accident happened was generally known to be a place where children congregated to play. The trial court refused to permit this testimony on the theory that it was "a collateral matter and would introduce questions not material in the case on trial." The fact that a corner was used as a playground by children would not be competent evidence against one who did not know of it. But it would be such evidence as against one who was informed of that fact. When the defendant was asked: "Q. State whether or not that corner is generally known to be a very dangerous corner in regard to children playing there," he answered: "No, not right at the corner." This was followed with the question: "Will you state that the Smith corner has not for a number of

years been considered by you and others as a dangerous corner in regard to children playing there?" The objection to this question was sustained, the court saying: "I don't know how you are going to get in that field." Other questions bearing upon this point were asked, objected to, and objection sustained, and then a motion made by the respondent's counsel to strike out all answers to questions relating to the character of the corner. This motion was granted.

Here the evidence shows that the children were on or near the corner. It appears without dispute that the respondent saw them. Now, while the appellant ordinarily would be entitled to show, if it were the fact, that the respondent knew children were apt to be at that corner engaged in play, in this case it would add nothing to the strength of appellant's cause to show this, because the fact of reputation as a playground would not alter respondent's responsibilities and resulting duties which attached the moment he saw the children there. The situation presented is one where the respondent actually knew the children were there and nothing further need be shown to fix his duties. It follows that no prejudicial error resulted by the adverse ruling of the court on the question of respondent's knowledge of the reputation of the corner as a playground.

Upon the point of improper argument appellant excepted to the following statement made by counsel to the jury: "This man is charged with negligence in speed, failure to blow the horn and to keep a proper lookout, and as a result of such negligence killed this boy. If this were true he could be prosecuted for manslaughter." An objection was timely made and the court in overruling the objection said: "The argument is categorical, and as far as he proceeded is proper argument." The record does not disclose what had been said by appellant's counsel to which this may have been

uttered in the way of reply. It does appear, however, that the trial court felt that the words used by respondent's counsel were in reply to something said by appellant's counsel. A strict compliance with the rules requires the trial court to interfere when improper argument is first advanced. In the practical conduct of a trial, however, it is sometimes impossible for the judge to do this, and the responsibility rests on the lawyers engaged in the trial to note improper argument and to challenge the same. It is proper practice to have a record made of the argument objected to and of the ruling of the court on the objection.

Counsel very naturally become impatient with interruptions, and an interruption by an opposing attorney sometimes brings temporary embarrassment to the objector. Realizing this, an attorney hesitates to interrupt the opposite side in its argument lest the interruption operate to his own disadvantage; but as the purpose hoped for in the trial of a case is the achievement of ultimate justice, the attorneys engaged in the trial ought to assist in preventing improper argument. Neither side should permit itself or the other side to indulge in unfair statements, exaggerations, or language which has for its sole purpose the inflaming of passion or the raising of feelings of prejudice. In a large measure the conduct of an argument and the ruling upon questions raised by objection during argument must be left to the discretion of the trial court. Unless the record of the rulings of the trial court contains a showing that something unfair occurred resulting in prejudicial error, the rulings of the trial court will not be disturbed.

Other points raised by appellant do not amount to prejudicial error. The testimony excluded as to the connection of the coroner with the insurance company, so far as this case is concerned, could have served no purpose except that of attempted impeachment, and the meager testimony he

gave was of facts so well established that we must hold no harm resulted from this ruling.

Having reached the conclusion that there was a jury question as to respondent's negligence, that the case was fairly submitted, no prejudicial error occurring, and that the evidence amply sustains the finding of the jury that respondent was free from negligence, it is unnecessary further to discuss the assignments of error.

*By the Court.*—Judgment affirmed.