MARKOWITZ, by Guardian *ad litem*, Respondent, vs. THE MILWAUKEE ELECTRIC RAILWAY & LIGHT COMPANY, Appellant.

*December 9, 1938—February 7, 1939.*

For the appellant there were briefs by *Shaw, Muskat & Paulsen* of Milwaukee, and oral argument by *Martin R. Paulsen*.

For the respondent there was a brief by *Rubin, Zabel & Ruppa,* attorneys, and *Wm. B. Rubin* and *W. C. Zabel* of counsel, all of Milwaukee, and oral argument by *Mr. Rubin* and *Mr. Zabel*.

FRITZ, J.  Upon the trial which resulted in the judgment now under review, the evidence upon which the plaintiff relies to establish negligence of the defendant, and upon which the latter relies to establish its countercharges as to plaintiff's contributory negligence was substantially the same as on the first trial.  In those respects the statement of facts in the decision reversing the former judgment (see 224 Wis. 347, 271 N. W. 380) is applicable on this appeal.  Likewise there are applicable the statements therein as to the meager and doubtful nature of plaintiff's testimony to establish that her fall from defendant's streetcar was due to such an unusual and severe jerk in the operation thereof as to constitute causal negligence on the part of the defendant.  On those issues there was virtually no other proof in support of plaintiff's contentions than her uncorroborated testimony on the first trial, and the weight and sufficiency thereof depended largely upon her credibility and competency as a witness.  Furthermore the credibility and competency of her testimony were of greater consequence on the last trial because,—by reason of matters which the defendant claims to have discovered since the first trial,—there was occasion for greater doubt as to whether an injury to her head, which she testified she sustained in falling from the car on June 5, 1932, was the sole

cause of the mental or hysterical condition and resulting disability that constitute the major basis for the amount claimed as damages, or whether the cause thereof was an injury which she sustained in an automobile accident on December 20, 1931.

When the plaintiff testified on the second trial on May 17, 1937, defendant's counsel asked questions on cross-examination which indicated that defendant had discovered since the first trial that plaintiff had theretofore testified falsely in respect to her age, given name, relatives, where she had formerly attended school and had been employed, and as to prior injury and illness. At first she answered that she did not remember, and upon further cross-examination she ceased to answer. Defendant's counsel charged that her failure to answer was a wilful refusal. Her counsel contended it was not wilful, but that she was in a semicoma state. After an extended recess, during which she was observed by several physicians, who differed in their opinions as to whether her failure to answer was wilful, and upon the application of her counsel, the court declared a mistrial. On June 4, 1937, on a petition filed in the county court by her sister, she was committed to the Milwaukee County Hospital for Mental Diseases. After four days she was placed under the control of her sister and transferred to a private sanitarium where she remained two weeks and was then returned to her sister's home.

Upon the third trial, instead of calling the plaintiff as a witness, her counsel offered her former testimony, without proving that she would never be able to attend a trial. Instead, the plaintiff relied upon only the testimony of her physician, Dr. Hermann, who stated,—

"I have been her physician since December 10, 1933. I saw her last Friday. She is bedridden. I am one of the physicians that testified in the county court on the application of having her committed. She is incompetent. At the present

time she is not capable of giving testimony, and if subjected to a court presence and an examination, she would probably be damaged by such procedure."

Defendant's counsel objected to the competency of the former testimony on the ground that it was inadmissible unless it was proven that, by reason of the insanity or illness in question, the plaintiff will never be able in all reasonable probability to attend and testify at a trial. Both parties relied on the decision in *Spencer v. State,* 132 Wis. 509, 112 N. W. 462. The court overruled the objection and admitted the former testimony, notwithstanding that decision. In that case this court said (pp. 512, 513) :

"In the case of illness or insanity or other physical or mental disability there has been considerable contrariety of opinion. Our examination of the authorities brings us to the conclusion that the English rule in criminal cases was that mere temporary illness or disability of the witness, where there was prospect of recovery, was not sufficient to justify the reception of the former testimony, but that it must appear that the witness was in such a state, either mentally or physically, or both, that in all reasonable probability he would never be able to attend the trial. When this fact satisfactorily appeared it was considered that the situation was practically the same as if the witness were dead. 1 Roscoe, Crim. Ev. (8th Am. ed.) 104, 105 ; *Rex v. Hogg* (1833), 6 Carr. & P. 176; *Reg. v. Wilshaw* (1841), Carr. & M. 145; *Reg. v. Marshall,* Carr. & M. 147; *Marler v. State,* 67 Ala. 55; *McClain v. Comm.* 99 Pa. St. 86. There is much reason in this rule."

Those conclusions have not been overruled in this state, and the rule that former testimony of a witness who has become ill or disabled is not admissible unless it satisfactorily appears that he is in such state, either mentally or physically, that he will probably never be able to attend a trial was applied or recognized in *Neal v. Novelty Leather Works,* 198 Mich. 598, 165 N. W. 681 ; *Siefert v. Siefert,* 123 Mich. 664,

82 N. W. 511; *McCrorey v. Garrett,* 109 Va. 645, 64 S. E. 978, 24 L. R. A. (N. S.) 139; *Southern Ry. Co. in Ky. v. Owen,* 164 Ky. 571, 176 S. W. 25; *Berney v. Mitchell,* 34 N. J. Law, 337; *Kirchner v. Laughlin,* 5 N. M. 365, 23 Pac. 175; *State v. Ezra Canney* (Me.), 9 Law Rep. 408; 3 Jones, Evidence (2d ed.), §§ 1184, 1185; 15 A. L. R. 523.

The requirements of the rule were not satisfied by the testimony of Dr. Hermann to the mere effect that the plaintiff was not capable "at the present time" of giving testimony, and the court was in error in admitting the former testimony upon merely that showing. The results of that error were probably highly prejudicial to the defendant. It was thereby deprived of the right to fully cross-examine plaintiff in relation to relevant and material matters as to which defendant's counsel was attempting to cross-examine her at the time she failed to answer his questions on the second trial. If, as is somewhat indicated by the proceedings upon that incomplete cross-examination, her answers upon a completion thereof would have disclosed that her former testimony as to relevant and material matters was false, and was of such nature or given under such circumstances as would warrant finding that she wilfully testified falsely, then it would be within the province of the jury to disregard her doubtful and uncorroborated testimony that her fall from the car was caused by such an unusual and violent jerk as constituted negligence on the part of the defendant in the operation thereof. Likewise, in that event, it would have been within the jury's province to disregard, in so far as uncorroborated, her testimony as to the nature and severity of her injury by reason of the fall, her prior employment, earnings, state of health, and the absence of injury or disability by reason of any prior accident. Even if, because of corroboration in some of those respects, her testimony could not be wholly disregarded, the credibility and weight thereof could be deemed so im-

paired as to diminish the probative value of some of the proof upon which her recovery herein is based.

The assessment of damages at $2,500 for medical and hospital attendance, and $25,000 for pain and suffering and loss of earnings would be grossly excessive if awarded for but the consequences of the injury to her right foot or leg, which plaintiff sustained in the fall. The only bases for awarding damages for other consequences are conclusions by some of plaintiff's medical witnesses that due to solely an injury to her head in that fall and a resulting concussion of the brain, she is permanently suffering from a definite nervous condition or mental illness termed "hysteria," and will never be well enough to assume a normal social and economic status in life. Whether those conclusions are sound depends upon whether she actually sustained any injury to her head in that fall, and, if she did, then what was the nature and extent thereof; and whether her subsequent mental or hysterical condition is due solely to that fall, or due to some prior head injury sustained by her. Whether she in fact sustained an injury to her head in the fall was in dispute under the evidence, and the determination of that issue in her favor depended largely upon the credibility and weight of her testimony, under all circumstances bearing thereon. Manifestly, if,—as the defendant claims to have discovered after the first trial, and attempted to prove on the last trial,—the plaintiff, in an automobile accident on December 20, 1931, sustained such serious injuries to her head and neck, and spine, that she was first taken to the County Emergency Hospital, and then had to remain in bed in her home for nine days after the accident, and while there told an examining physician that her head was "numb" and that she had headaches and dizziness "all of the time," and a few days later told an insurance claim adjuster, who called to settle the claim, and found her crying and still in bed, that she had a head injury, and a continuous headache since the accident, that "my eyes are

also affected as they water. My vision gets blurred at times," and that she sustained an injury to her right hip and the muscles around her spine, then those material matters should also have been submitted to be taken into consideration by plaintiff's expert witnesses in arriving at their conclusions as to the cause of plaintiff's subsequent mental or hysterical condition. Instead of that being done on behalf of the plaintiff, she testified in depositions taken prior to the first trial, and also upon that trial, that she had never been in any other accident; had at no time been under the care of a doctor; and had always been in good health prior to her fall from the streetcar; and, on her cross-examination at the second trial she testified that she did not remember that she had ever been treated in a hospital before that accident. As the result of plaintiff's concealment in all proceedings prior to the last trial of the facts in respect to her injury on December 20, 1931, and her condition immediately following,—if she was then in fact injured,—there was no proof introduced in relation thereto until the defendant had an opportunity on the last trial to introduce proof thereof, after the plaintiff's expert witnesses had testified and her case in chief was closed. Consequently, there was not included in the facts assumed by them as basis for their conclusion that plaintiff's hysterical condition was caused by injuries sustained in the fall from the car, the material fact,—if true,—that she had sustained injuries to her head and spine in another accident within six months prior to that fall. Under the circumstances, it is evident that the issues in relation to damages have not been fully and fairly tried, and in so far as the damages may have been assessed upon the theory that plaintiff's mental or hysterical condition was caused solely by her fall from the car, the basis therefor was too conjectural to sustain the assessments.

For the several reasons stated above a new trial must be granted. Defendant contends also that the plaintiff was mentally so incompetent when she testified upon the first

trial that she did not have sufficient capacity to understand and appreciate the nature and obligation of an oath, and to observe and describe correctly the facts in regard to which she was questioned; and that therefore she was incompetent to testify and her testimony should not have been admitted by the court. That contention cannot be sustained. The testimony of a witness is inadmissible when there is sufficient proof to convince the court that the witness lacks mental capacity to understand and appreciate her obligations as a witness, and to understand the nature of questions put, and to form and communicate intelligent and truthful answers thereto. *Hancock v. Hallmann,* 229 Wis. 127, 281 N. W. 703; *DeGroot v. Van Akkeren,* 225 Wis. 105, 273 N. W. 725. But in that connection it is established that "the competency of a witness to testify is largely a question for the trial court, and impaired mental condition of a witness ordinarily goes to the weight or credibility of the evidence;" and that "the trial court was in better position to judge of the competency of the evidence than this court." *Pawlak v. Pelkey,* 167 Wis. 367, 369, 370, 167 N. W. 427; *Burns v. State,* 145 Wis. 373, 128 N. W. 987. A review of the record with those principles in mind discloses that the court was warranted in concluding that the plaintiff was not mentally so incompetent as to render her testimony inadmissible.

Defendant further contends that improper argument by plaintiff's counsel inflamed the minds of the jury and made it impossible to have a fair and impartial trial. That contention is based upon certain improper and inflammatory statements which, upon defendant's objection, the court instructed the jury to disregard without otherwise attempting to counteract the prejudicial effect thereof. Although we said in *Hanes v. Hermsen,* 205 Wis. 16, 22, 236 N. W. 646, that "the responsibility rests on the lawyers engaged in the trial to note improper argument and to challenge the same,"

we also said, in connection therewith, that "a strict compliance with the rules requires the trial court to interfere when improper argument is first advanced." The mere sustaining of opposing counsel's objection to such an argument, with but an instruction to the jury to disregard the argument, often fails to remedy the prejudicial effect thereof; and the latter may be augmented rather than avoided by counsel's objecting thereto in an attempt to protect his client's rights. As we said in *Georgeson v. Nielsen,* 218 Wis. 180, 185, 260 N. W. 461,—

"A remark is made by counsel, known by him to be improper, and made with intent and expectation that it will improperly influence the jury to the advantage of his client and the disadvantage of the opposing party. No extraneous evidence is needed to establish such intent. If such result is not intended, why are such remarks made? Objection to the remark by opposing counsel enhances likelihood that the intended effect will be produced, both by attracting attention to it and by invoking a repetition. The remark being made, or made and repeated, the intended effect is probably produced, and the court's mere formal sustaining of the objection to it and telling the jury to disregard what they have already regarded can avail little toward destroying the effect thus probably produced. Even a reprimand to offending counsel 'does not cure the wrong done to litigants' by prejudicial remarks. *Corti v. Conney,* 191 Wis. 464, 472, 211 N. W. 274. . . . With more reason may it be said that the homeopathic dose here administered by the trial court did not effect a cure."

Proper administration of justice requires that the court promptly check such improprieties on its own motion. A verdict returned upon a record free from such improprieties or after effective judicial control by prompt and positive rulings checking or counteracting them is not as apt to be impaired by reason of prejudice or passion on the part of the jury, and upon motions after a verdict its findings can be approved by the court with greater assurance and confidence

as to the integrity and rectitude of the verdict. As we said in *Rissling v. Milwaukee E. R. & L. Co.* 203 Wis. 554, 558, 234 N. W. 879,—

"when there has been such improper conduct, and that is followed by a verdict that indicates that the offending counsel has succeeded in prejudicing the jury to his advantage, courts should freely set aside the verdict and grant a new trial in the interest of justice. 'A reprimand to the attorney does not cure the wrong done to litigants. These matters have been pointedly and repeatedly called to the attention of attorneys, and where attorneys indulge in conduct of the kind exhibited in this case they must do it with the knowledge that judgments secured by such methods cannot be approved by this court.' *Corti v. Conney, supra.*"

As there must be a reversal on other grounds, it is not necessary to determine whether the objectionable argument was provoked by or in reply to improper assaults by defendant's counsel upon plaintiff's character, or whether the argument and absence of effective judicial approval thereof operated to the prejudice of the defendant to such an extent as to entitle it to a new trial. No purpose is served by discussing those matters herein further than necessary to avoid repetition thereof to the end that the new trial will be conducted properly and strictly in the interests of justice by all concerned so that this litigation will be promptly terminated by a fair and just judgment.

*By the Court.*—Judgment reversed, and cause remanded with directions to the circuit court to grant a new trial and in that connection exercise its powers under sec. 270.49 (2), Stats., in relation to the costs of the last trial.