STATE of Wisconsin, Plaintiff-Respondent,

v.

Thomas V. DRUSCH, Defendant-Appellant. †

Court of Appeals

*No. 86–1580–CR. Submitted on briefs March 10, 1987.—*
*Decided April 23, 1987.*

(Also reported in 407 N.W.2d 328.)

† Petition to review denied.

313

For the defendant-appellant the cause was submitted on the briefs of *Patricia M. Heim* of La Crosse.

For the plaintiff-respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Sally L. Wellman,* assistant attorney general.

Before Dykman, Eich and Sundby, JJ.

EICH, J. Thomas Drusch appeals from a judgment convicting him of two counts of first degree sexual assault in violation of sec. 940.225(1)(d) Stats., and from an order denying his motions for postconviction relief. The issues are: (1) whether the trial court erred in allowing a transcript of the preliminary hearing testimony of one of the child victims to be read to the jury; (2) whether the evidence was sufficient to prove beyond a reasonable doubt that Drusch had sexual contact with the victims with the intent to become sexually aroused or gratified; (3) whether Drusch's six-year sentence was so excessive and harsh as to constitute an abuse of the trial court's discretion; and (4) whether we should order a new trial in the interest of justice. We resolve all issues against Drusch and affirm.

## I. PRIOR TESTIMONY

Both child victims, E., age five, and S., age eight, testified at the preliminary hearing. At trial, when S. was called to the witness stand, she began to cry and was unable to respond to questions. The court recessed to allow the prosecutor and a victim/witness coordinator to talk with her. The prosecutor reported to the court that S. had begun to cry each time he raised the possibility of further testimony and that she told the coordinator she could not testify. The prosecutor also stated that S.'s inability to testify was due to the presence of people in the courtroom—including the jurors—and also because the defense attorney frightened her. The prosecutor then asked the court to rule that S. was unavailable to testify within the meaning of sec. 908.04, Stats., so that her testimony at the preliminary hearing could be read into the record

pursuant to sec. 908.045(1). The latter statute provides an exception to the hearsay rule for a declarant's former testimony where he or she is "unavailable as a witness." Insofar as may be relevant to this case, sec. 908.04(1)(d) defines the quoted phrase as "unable to ... testify at the hearing because of ... then existing physical or mental illness or infirmity."

After hearing arguments of counsel, but before ruling on the prosecutor's motion, the court had S. brought back into the courtroom for questioning outside the presence of the jury. After answering a few questions, she again began to cry, eventually burying her head in her hands and sobbing. The court then ruled:

> The Court is well satisfied that the witness is certainly unavailable and cannot testify today. The record has been made as to the efforts that have been made to attempt to get her to testify including an attempt to get her to testify out of the presence of the jury to see what her demeanor was. This is a child of ... very tender years. I think that it is entirely possible that she might well at some time in the future be able to take the stand and testify although how long this condition will last or how long the fear she has of testifying or her recall of the incident which would cause her to have that apprehension and inability to testify will last. The Court believes that because of the peculiar circumstances of her age and the nature of the offense which is involved, and that within the near future we would have a repetition of her conduct, and accordingly I am going to declare that for the purposes of ... 908.04(1)(d), that she is unable to be present and testify at this hearing because of her emotional condition.

S.'s preliminary hearing testimony is hearsay. When the defendant in a criminal case claims denial of his or her right to confront witnesses, the propriety of admitting hearsay evidence involves a two-step analysis. The threshold question is whether the evidence fits within a recognized hearsay exception under state law. If not, it is excluded; if it does, the defendant's constitutional right to confrontation must be considered. In order to satisfy the confrontation clause, it must be established that the witness was unavailable and that the evidence sought to be admitted bears some indicia of reliability. *State v. Bauer,* 109 Wis. 2d 204, 215, 325 N.W.2d 857, 863 (1982).

A witness's former testimony is not excluded by the hearsay rule if the declarant is "unavailable as a witness." Sec. 908.045(1), Stats. The quoted phrase is defined in sec. 908.04(1)(d) to include situations in which the declarant "[i]s unable to ... testify at the hearing because of ... then existing ... mental illness or infirmity." Drusch argues first that the transcript was not admissible under state law because S. was not "unavailable" within the meaning of sec. 908.04(1)(d). He bases the argument on the absence of expert medical testimony that she was permanently disabled from testifying. Second, he maintains that his constitutional right to confront the state's witnesses was violated because: (1) the prosecution did not make a reasonable effort to elicit S.'s testimony; and (2) her prior testimony did not have adequate "indicia of reliability."

(a) *Unavailability Under Sec. 908.04(1)(d), Stats.*

The admissibility of former testimony is discretionary with the trial court, and its decision will not

be overturned unless it has abused that discretion. *La Barge v. State,* 74 Wis. 2d 327, 338, 246 N.W.2d 794, 799 (1976). If the record shows that discretion was in; fact exercised, and if we can perceive a rational basis for the court's action, we will sustain it. *Howard v. Duersten,* 81 Wis. 2d 301, 305, 260 N.W.2d 274, 276 (1977).

Section 908.04(1)(d), Stats., does not require permanent testimonial incapacity in order for prior testimony to be admitted into evidence. Under sec. 908.04(1)(d), a witness who is unable to testify at trial because of a "then existing" infirmity is deemed unavailable within the meaning of the Wisconsin Rules of Evidence.

■

S. had testified at the preliminary hearing, and her inability to testify at trial was a surprise to both court and counsel. A continuance was not practical, for the problem arose in mid-trial, after several witnesses had already testified. The jury had been advised that the trial was expected to last only one day and juror availability for a longer period of time was not ascertained. The court had observed the child on the stand both in and outside the jury's presence and had the benefit of observations of the child's behavior and demeanor made by the victim/witness coordinator and the prosecuting attorney. The court's findings of historical fact are not clearly erroneous, sec. 805.17(2), Stats., and the circumstances surrounding the witness's inability to testify, including the impracticality of adjournment and the undesirability of a mistrial, lead us to conclude that the court did not abuse its discretion in declaring that S.'s then existing condition rendered her unavailable within the meaning of sec. 908.04(1)(d), Stats.

Nor do we believe expert medical testimony is essential to the determination. While some of the cases cited by Drusch involved medical testimony as to the witnesses' incapacity, none held that such testimony is required, and all are distinguishable. In *State v. Burns,* 112 Wis. 2d 131, 332 N.W.2d 757 (1983), *Sheehan v. State,* 65 Wis. 2d 757, 223 N.W.2d 600 (1974), and *Markowitz v. Milwaukee E. R. & L. Co.,* 230 Wis. 312, 284 N.W. 31 (1939), the witnesses never appeared at trial; the prosecution simply made a pretestimonial request that they be declared unavailable, and the experts were prepared to offer their opinions in lieu of the witnesses' appearance. Similarly, in *State v. Gollon,* 115 Wis. 2d 592, 340 N.W.2d 912 (Ct. App. 1983), the only evidence of the child's unavailability was her mother's statement that she was too frightened to testify. The state made no effort to produce the witness, she was not examined by the court, and the court made no finding that the child was unavailable. *Id.* at 600–01, 340 N.W.2d at 916.

In this case, the opposite is true. S. was called to the stand and began to testify. She soon became distraught and could not continue. Later, she was questioned in court before any ruling was made. Under the circumstances, the trial court could judge the witness's condition for itself, and Drusch has not offered any authority establishing a *per se* requirement of expert medical testimony in such situations. The court balanced the interests of S., the prosecution and the defense, and arrived at a reasoned, legally supportable conclusion that S. was unavailable within the meaning of sec. 908.04(1)(d), Stats. Again, there was no abuse of discretion.

Drusch also contends that the "test" for unavailability is whether the witness "suffers from a severe

mental illness which may be worsened if she is forced to testify at trial," citing *State v. Burns,* 112 Wis. 2d at 142, 332 N.W.2d at 763. He contends that S.'s disability, as found by the trial court, does not rise to the level of a "severe mental illness." The quoted statement, however, is not a test at all but merely the *Burns* court's reference to the particular facts of the case. The test for unavailability is found in sec. 908.04(1)(d), Stats., and it is simply that the witness is "unable to ... testify at the hearing because of ... then existing physical or mental illness or infirmity." The trial court, after considering the information discussed above and observing S. before the jury and in private, determined that she was so frightened and emotionally upset by the presence of the jury, the trial setting and the offense itself that she was unable to testify and would continue in that inability in the near future. The ruling was the equivalent of a finding that her inability was the result of a "then existing ... mental illness or infirmity" within the meaning of the statute, and that is all that is required.

(b) *Confrontation*

The sixth amendment to the United States Constitution and art. I, sec. 7, of the Wisconsin Constitution guarantee a criminal defendant's right to confront witnesses called by the prosecution. The primary purpose of the right is to ensure that the trier of fact has a satisfactory basis to evaluate the truthfulness of the evidence. *Dutton v. Evans,* 400 U.S. 74, 89 (1970). Mere compliance with the hearsay rule is not enough. *State v. Marshall,* 113 Wis. 2d 643, 652, 335 N.W.2d 612, 616 (1983). To satisfy the confrontation clause,

the prosecution must either produce, or establish the unavailability of, the declarant and then show that the statement sought to be admitted bears reasonable indicia of reliability. *Ohio v. Roberts,* 448 U.S. 56, 65–66 (1980).

In the constitutional sense, a finding of unavailability may not be made unless "[t]he prosecution ... make[s] a good faith effort to produce [the] witness for trial." *Gollon,* 115 Wis. 2d at 600, 340 N.W.2d at 916. It is a mixed question of law and constitutional fact, *id.* at 600–01, 340 N.W.2d at 916, and the length to which the state must go to produce the witness is judged by a standard of reasonableness. *Roberts,* 448 U.S. at 74.

The parties have not offered, nor have we found, any cases discussing the question of unavailabiity on facts such as those under consideration here. However, we believe that some guidance may be found by examining the facts of the cases in which courts have ruled that the prosecution failed to carry its burden of establishing unavailability.

We have noted that in *Gollon, supra,* the state made no effort to produce the child witness, basing its request for admission of the prior testimony solely on the mother's opinion that the child was too frightened to testify. The California Supreme Court considered a similar situation in *People v. Stritzinger,* 668 P.2d 738, 746, 748 (Cal. 1983), and concluded that either expert testimony or the witness's express refusal to testify was required. And in *Burns v. Clusen,* 798 F.2d 931, 942 (7th Cir. 1986), the prosecution's efforts were found to be insufficient because there was no evidence of the witness's present condition at the time of trial.

In this case, the state produced S. at trial. Her inability to testify due to what the trial court de-

scribed as her fear and her "emotional condition" was the equivalent of a refusal to testify. She became unable to testify in mid-trial, and her condition and the reasons underlying her disability were adequately explored by the court prior to declaring her unavailable. The evidence of unavailability could not have been more immediate, and the court determined that there was no way of knowing "how long this condition will last or how long the fear she has of testifying or her recall of the incident which would cause her to have that apprehension and inability to testify will last."

Drusch suggests that several "solutions" to the problem should have been explored by the court before declaring S. unavailable and allowing her prior testimony to be read to the jury. They include "conducting the proceedings in surroundings more comfortable than the courtroom, physically blocking the witness' view of the defendant, and allowing the child to testify behind a one way mirror and/or using a video taped depositions [sic]." Under the circumstances of this case, however, we are satisfied that the state's efforts to offer S.'s in-person testimony were reasonable. We have discussed at some length the limited options available to the trial court in light of the circumstances surrounding S.'s attempts to testify, the status of the trial at the time and the impracticality of adjournment. These factors lead us to the conclusion that the attempts to produce S.'s live testimony were reasonable and that the "unavailability" requirement of the confrontation clause was met.

In addition to unavailability of the witness, the prosecution must show that the offered testimony carries indicia of reliability in order to satisfy the confrontation clause. *Gollon,* 115 Wis. 2d at 600, 340

N.W.2d at 916. The requirement is intended "to augment accuracy in the factfinding process by ensuring the defendant an effective means to test adverse evidence." *Bauer,* 109 Wis. 2d at 211, 325 N.W.2d at 861, quoting *Roberts,* 448 U.S. at 65. The test is whether the trier of fact has a "satisfactory basis for evaluating the truth of the prior statement." *Mancusi v. Stubbs,* 408 U.S. 204, 213 (1972), quoting *California v. Green,* 399 U.S. 149, 161 (1970).

Drusch argues first that the transcript of the preliminary hearing does not contain sufficient indicia of the reliability of S.'s testimony, although he does not point to any specific voids or shortcomings in the record. He does no more than repeat his counsel's assertion to the trial court during argument that:

> My recollection from reading [the preliminary testimony] is that [the prosecutor] did object to certain areas of inquiry as to one of the witnesses, the earlier witness, [E.]. I did not pursue the same areas with the next witness [S.] because the court at the preliminary was sustaining the questions [sic] and certainly there would be additional questions that I would want to ask that I did not ask at the preliminary hearing.

Before allowing the evidence, the trial court reviewed the transcript of the preliminary hearing and found that the state did not object to any of defense counsel's questions to S. Our own review of the record bears this out, and we also note that the same was true for E.'s testimony. Nor did the preliminary hearing court limit defense counsel's questioning in any way. Cross-examination appears to have been unrestricted. Finally, we reject Drusch's suggestion that his opportunity for cross-examination was un-

constitutionally restricted because his attorney stated that there were other questions he would have asked had he realized the testimony would be admitted at trial. *See State v. Myren,* 133 Wis. 2d 430, 439, 395 N.W.2d 818, 823 (Ct. App. 1986) (confrontation clause is satisfied by the *opportunity* for cross-examination).

Drusch also argues that because the preliminary hearing is not a trial, but only a search for probable cause with restricted cross-examination on witness credibility, there is inadequate opportunity for confrontation in the constitutional sense. A similar argument was rejected by the supreme court in *Bauer,* 109 Wis. 2d at 217–19, 325 N.W.2d at 864–65, and we reject it here. Admission of S.'s preliminary hearing testimony did not deprive Drusch of his right to confront the state's witnesses.[1]

---

[1]Even if admission of the prior testimony could be considered error, we are confident that on the basis of the record as a whole it was harmless beyond a reasonable doubt. *Delaware v. Van Arsdall,* — U.S. —, —, 89 L. Ed. 2d 674, 684 (1986).

Whether a confrontation error is harmless in a particular case depends on a variety of factors including the importance of the testimony to the prosecutions's case, whether it was cumulative, the presence or absence of evidence contradicting or corroborating the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. *Id.* at 686–87. *See also State v. Zellmer,* 100 Wis. 2d 136, 151, 301 N.W.2d 209, 216 (1981) (error harmless because evidence cumulative).

Here, the evidence of guilt was substantial. Given the nature of the case and the strength of the state's evidence, S.'s prior testimony was cumulative. Drusch's acts with both girls were testified to in detail by two other playmates. The children's versions were generally consistent with each other and inconsistent with Drusch's version. No limitations were placed on defense counsel's cross-examination of S. at the preliminary hearing, and

## II. SUFFICIENCY OF THE EVIDENCE

One element of the crime of sexual assault is that the contact with the victim be undertaken "for the purpose of ... sexually arousing or gratifying the defendant." Sec. 940.225(5)(a), Stats. Drusch argues that there was no evidence at trial to establish beyond a reasonable doubt that he had contact with E. and S. with the intent to become sexually aroused or gratified.

We will affirm the jury's verdict if the jurors, acting reasonably, could have found guilt beyond a reasonable doubt. *State v. Alles,* 106 Wis. 2d 368, 376, 316 N.W.2d 378, 382 (1982). Thus, if any possibility exists that the jury could have drawn appropriate inferences to find the requisite guilt, we will not substitute our judgment for that of the jurors even if we believe they should not have returned a guilty verdict on the evidence before them. *Id.* at 377, 316 N.W.2d at 382. We view the evidence most favorably to the conviction and will overturn the verdict only if the evidence "is inherently or patently incredible, or so lacking in probative value that no jury could have found guilt beyond a reasonable doubt." *Id.* at 376–77, 316 N.W.2d at 382.

Drusch was arrested and charged with the offenses as a result of his contact with the two children at a playground. He conceded that he lifted the girls to the monkey bars and from the bars to the ground several times, but he asserts that, while doing so, he only touched them on the buttocks and around the waist and that he lacked any sexual intent or motiva-

---

that cross-examination was read to the jury. Any error was harmless beyond a reasonable doubt.

tion. He testified that he never touched them in the genital area. In support of his argument that the evidence of intent is lacking, Drusch points out that there was no testimony that he attempted to put his hand inside the girls' clothing or engage them in "some kind of sexual play." After his contact with the children, Drusch remained at the playground and did not attempt to flee when approached by police officers after the girls had reported the contact to their parents. He contends that "[t]his certainly does not appear to be the conduct of a person who has just intentionally molested children for his sexual arousal and gratification" and that, as a matter of law, no reasonable jury could have so found. We disagree.

■

Intent to become sexually aroused or gratified, like other forms of intent, may be inferred from the defendant's conduct and from the general circumstances of the case—although the jury "may not indulge in inferences wholly unsupported by any evidence." *State ex rel. Kanieski v. Gagnon,* 54 Wis. 2d 108, 117, 194 N.W.2d 808, 813 (1972). The evidence of intent in this case was circumstantial, but "circumstantial evidence can be as probative and sometimes more probative than direct evidence." *Peters v. State,* 70 Wis. 2d 22, 33, 233 N.W.2d 420, 426 (1975). While it has been said that when circumstantial evidence is relied upon for conviction, it must be sufficiently strong to exclude every reasonable hypothesis of innocence,

> [t]his does not mean that, if *any* of the evidence brought forth at trial suggests innocence, the jury cannot find the defendant guilty. The function of the jury is to decide which evidence is credible and which is not, and how conflicts in the evidence are

to be resolved. The jury can thus, within the bounds of reason, reject testimony suggestive of innocence. The rule that the circumstantial evidence must exclude every reasonable theory of innocence refers to the evidence which the jury could have believed and relied upon to support its verdict. *Peters,* 70 Wis. 2d at 34, 233 N.W.2d at 426–27. [Emphasis in original; footnote omitted.]

The state presented evidence that Drusch did not know either of the girls and that neither of them needed his help or asked for it while they were playing on the bars. He picked E. up three or four times with one hand between her legs, and she stated that this bothered her. S. testified that Drusch held her with his hand between her legs and squeezed. A playmate testified that she saw Drusch pick both girls up several times with one hand between their legs and saw his hand move when he had it between E.'s legs. Drusch told the playmate that his name was Bill and that one of the girls was his daughter. Neither statement was true, and Drusch also conceded that he lied to the police when first approached, telling them that he only picked the girls up by the shins because it "wouldn't look good" if he were to admit he held them from behind. There were no other adults in the park when Drusch approached the children and touched them. They left the park immediately after the incident and told their parents about the encounter because one of them thought Drusch was doing something wrong.

Thus, there was evidence before the jury that Drusch approached the girls while they were playing on the bars, and uninvited, repeatedly lifted and carried them with his hand between their legs,

sometimes squeezing them in the vaginal area, and that he lied about his identity to the children and about his contact with the children to the police. From these facts, the jury could make its own assessment of the witnesses' and Drusch's credibility and could reasonably infer that he touched both girls with the intent to become sexually gratified or aroused.

## III.  THE SENTENCE

Drusch was sentenced to six years in prison on the first count. On the second, the court placed him on probation for eight years following completion of his prison sentence. Drusch does not argue that the trial court failed to exercise its discretion in imposing the sentence but only that the sentence itself was so excessive and harsh as to constitute an abuse of discretion as a matter of law.

A defendant challenging a sentence as excessive carries a heavy burden. We begin with the presumption that the trial court acted reasonably, and before we will consider overturning a sentence, "the defendant must show some unreasonable or unjustifiable basis in the record for the sentence complained of." *Elias v. State,* 93 Wis. 2d 278, 281–82, 286 N.W.2d 559, 560 (1980).

Drusch relies on the following "mitigating factors" in arguing that we should vacate the sentence: he did not use force or threats against the children; no weapons were used; he did not have intercourse with them, but only touched them; he did not attempt to restrain them when they left the park; and he had only two criminal convictions on his record for minor drug-related and property crimes some eleven years

earlier. He also complains that the trial court placed undue emphasis on his denial of any wrongdoing.

Drusch faced a total maximum sentence of forty years in prison on the two counts. The prosecution argued for fifteen years plus a lengthy period of probation. A presentence report was prepared which, among other things, outlined the emotional distress suffered by the victims and their families as a result of the offenses. It discussed Drusch's personal history, the seriousness of the offense, and recommended five years' imprisonment on the first count and ten years consecutive probation on the second.

The trial court heard arguments of the attorneys and Drusch's own statement. It proceeded to discuss Drusch's needs and the personal and physical hardships he had suffered over the years. The sentencing transcript indicates that the court emphasized the effect Drusch's conduct had on the child victims, even though no physical violence was used. Based on his conduct with these children, the court found that Drusch presented a danger to the community and that society's need for protection from such conduct required placing him under long and careful supervision. These are all appropriate and proper factors for consideration in sentencing, and it is for the trial court, not this court, to determine how much weight to give to each. *State v. Harris,* 119 Wis. 2d 612, 623–24, 350 N.W.2d 633, 639 (1984). As for the court's remarks concerning Drusch's denial of wrongdoing, the comments were directed toward his amenability to rehabilitation and treatment, and we see no impropriety. *State v. Wickstrom,* 118 Wis. 2d 339, 355–56, 348 N.W.2d 183, 192 (Ct. App. 1984).

Considering the record and the trial court's articulation of the reasons for the sentence imposed, we cannot say that it was "so excessive and unusual and so disproportionate to the offense committed as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances." *Ocanas v. State,* 70 Wis. 2d 179, 185, 233 N.W.2d 457, 461 (1975). There was no abuse of discretion, and we uphold the sentence.

## IV.  NEW TRIAL IN THE INTEREST OF JUSTICE

The power to grant a new trial in the interest of justice is exercised only in exceptional cases. *State v. Cuyler,* 110 Wis. 2d 133, 141, 327 N.W.2d 662, 667 (1983). Here, Drusch's request is essentially a restatement of his earlier argument that the trial court erred in allowing the preliminary hearing transcript of S.'s testimony to be read to the jury. We have considered and rejected that argument, and we see no basis for believing that justice has miscarried in this case or that the real controversy has not been tried.

*By the Court.*—Judgment and order affirmed.

SUNDBY, J.  (*concurring*). I agree with the majority that S., one of the child-victims in this case, was "unavailable" to testify at Drusch's trial. I am persuaded to this conclusion, however, reluctantly, and only because S.'s inability to testify could not reasonably have been anticipated by the court or the prosecutor. S. had testified at Drusch's preliminary hearing. Not until trial did the victim-witness coordinator become aware that S. would not be able to

testify. The court made several attempts to take S.'s testimony, both in the presence of and the absence of the jury. S.'s inability was a surprise to all parties. In the circumstances, the court did not abuse its discretion by declaring S. unavailable and admitting her preliminary hearing testimony.

I write separately because I believe the need to weigh the physical and emotional well-being of the child-witness against a defendant's right to confront the witnesses must be emphasized and the options available to the prosecutor and the trial court when faced with that need should be explored.

Here, the trial court admitted S.'s preliminary hearing testimony because her emotional state did not allow her to testify at Drusch's trial. However, the Confrontation Clause reflects a preference for face-to-face confrontation *at trial,* or, in the alternative, an opportunity to test the out-of-court statement by "contemporaneous" cross-examination, or its equivalent. *State v. Myren,* 133 Wis. 2d 430, 437, 395 N.W.2d 818, 822 (Ct. App. 1986). The right of confrontation is a *trial* right, *Pennsylvania v. Ritchie,* 480 U.S. —, —, 94 L. Ed. 2d 40, 54 (1987), that must be jealously protected.

While the right of confrontation is the defendant's greatest protection, it also presents the most difficulty in cases involving child witnesses. "It is ... the sixth amendment right of confrontation that creates the most harm to child witnesses since the repetition of the details of a sordid event (especially to strangers in public), the necessity of being face-to-face with the attacker at the preliminary hearing and again at trial, and the length of the court process prevent child witnesses from being able to forget about the incident and cause psychological harm."

Parker, *The Rights of Child Witnesses: Is the Court A Protector Or Perpetrator?*, 17 New Eng. L. Rev. 643, 646 (1982). The trauma of testifying may render some children psychologically unavailable thereby creating a potential infringement of the defendant's right to confrontation. *See* Myers, *The Legal Response to Child Abuse: In the Best Interest of Children?*, 24 J. Fam. L. 149, 224–25 (1985–86). Our supreme court has recognized the traumatic effect on a child of testifying in child abuse cases and the need "to accommodate the needs of the child victim-witness within the context of the public policy of achieving justice through the adversary system." *State v. Gilbert*, 109 Wis. 2d 501, 516, 326 N.W.2d 744, 751 (1982).

Because of the importance to the defendant of the right of confrontation, we must be cautious when declaring a child unavailable to testify.

> In the context of child abuse litigation, the danger lies in the allure of protecting children from the trauma of the courtroom. The temptation to declare a child unavailable is very real, and a finding of psychological unavailability is a relatively simple way to reach the desired goal. In rendering a decision on availability, the court may fail to accord proper weight to the defendant's right to cross-examination. This failing is of particularly troubling dimensions in abuse litigation where the child's hearsay may be the most damaging evidence against the accused.

Myers, *supra*, 24 J. Fam. L. at 225.

Many solutions have been proposed and utilized to address the problem of taking the testimony of the child victim-witness including conducting proceedings in surroundings more comfortable than the court-

room, blocking the witness's view of the defendant, allowing the child to testify behind a one-way mirror, videotaped depositions and simultaneous video transmission of testimony being given in another room. *Gilbert,* 109 Wis. 2d at 518 n. 24, 326 N.W.2d at 752; *State v. Sheppard,* 484 A.2d 1330 (N.J. Super. Ct. Law Div. 1984). Section 967.04(7), Stats., permits the trial court to order a videotaped deposition of a child. The court may admit the deposition into evidence without an additional hearing under sec. 908.08, Stats. Sec. 967.04(9). If admitted, the child may not be called as a witness unless the court so orders upon a showing that fairness requires the child's additional testimony. Sec. 967.04(10) The court controls the deposition and has broad latitude to determine the surroundings in which and the conditions under which the deposition will be taken. Sec. 967.04(8)(b).

The victim-witness program provides services to judges in determinations concerning the taking of videotaped depositions and advising the district attorney concerning the ability of a child witness to cooperate with the prosecution and the potential effect of the proceedings on the child. Sec. 950.055(2)(b) and (c), Stats.

The Wisconsin Supreme Court has admonished trial courts to make use of such procedures in criminal trials where the testimony of a child-witness is necessary or important to the proceedings. *State v. Nelson,* 138 Wis. 2d 418, 406 N.W.2d 385 (1987)(Hefferman, C.J., dissenting). In *Gilbert,* 109 Wis. 2d at 516–17, 326 N.W.2d at 751–52, the court stated:

> The circuit court should ... use the tools available to the criminal justice system to eliminate or lessen the burden on [the child] while making her

testimony available in the criminal proceeding. The court should afford the child witness in a criminal proceeding as much protection as is consistent with the public interest in convicting the guilty and with the constitutional rights of the accused. ...

The circuit court has power, within constitutional limits, to alter courtroom procedures to protect the emotional well-being of the child witness.