Richards vs. The State.

RICHARDS, Plaintiff in error, vs. THE STATE, Defendant in error.

*February 8 — May 3, 1892.*

CRIMINAL LAW AND PRACTICE: MURDER. *(1, 2) Preliminary examination: Waiver of illegality: Pleading to the merits: Complaint by wife of accused. (3) Assistance to district attorney. (4, 5) Admissions by acquiescence. (6, 7) Dying declarations: Inconsistency. (8) Impeachment of witness. (9, 10) Improper remarks by counsel to jury. (11) Self-defense: Instructions to jury.*

1. The failure or omission of a legal preliminary examination is waived by the defendant pleading to the merits before offering to plead such failure or omission in abatement (sec. 4654, R. S.); and his application, after such waiver, for leave to withdraw his plea in bar and interpose such plea in abatement, is addressed to the discretion of the trial court, and the denial of such leave cannot be held error unless there was a clear abuse of discretion. In this case, considering that such application was delayed until the cause was called for trial, and that a judgment for defendant on such dilatory plea would, presumably, not have prevented another prosecution for the same crime, the denial of the application is *held* not an abuse of discretion.

[2. Whether, where the complaint was made by the wife of the accused, his arrest and examination are for that reason null and void, not determined.]

3. Under sec. 4504, S. & B. Ann. Stats., the partner of the district attorney may assist in the prosecution of a case, although the trial court has also appointed other assistant counsel, under sec. 752a.

Richards vs. The State.

4. Inculpatory statements, made in the presence and hearing of one accused of crime, which he, having opportunity to do so, does not deny, and the truth or falsity of which is within his personal knowledge, are admissions of the accused by acquiescence, and as such admissible in evidence, although such statements were made by a person not competent to testify in the case.

5. Such statements, in this case, were made by the wife of the accused while he was in the room with others who heard them. He was in possession of his faculties, awake, and could hear. Evidence of such statements was objected to only on the ground that the wife was not a competent witness, and there was no suggestion that it should be rejected because the accused did not hear such statements. *Held,* that the evidence was properly admitted, although the accused testified that he did not hear the statements.

6. The person of whose murder the defendant was accused was stabbed on Friday night and died on the following Monday. On Sunday and again on Monday he made a statement charging defendant with the stabbing. When these statements were made he was *in extremis* and knew he must die in a short time. *Held,* that they were admissible in evidence as dying declarations.

7. A conflict or inconsistency in dying declarations, otherwise admissible, goes only to their credibility.

8. A witness for the prosecution was asked, on cross-examination, as to a matter in no way relating to his testimony in chief, and was afterwards called as a witness for the defense and further examined as to such matter. *Held,* that as to such matter the defense had made him its own witness, and could not impeach his testimony by evidence that he had made different statements out of court.

9. Exceptions based upon certain remarks by counsel to the jury are *held* not to be well taken where, in each instance, upon objection being made, the trial court promptly ruled that the remarks were improper, and the counsel at once desisted therefrom.

10. There was no error in allowing counsel for the prosecution to invite the jury to examine the overcoat of the accused, which had been exhibited in their presence during the trial, to see if they could find blood-stains upon it, the purpose being to refute the theory of the defense that certain cuts in the coat were made by the deceased with a knife, and that the accused was cut with the knife, and acted in self-defense in what he did.

11. The court charged the jury on the subject of self-defense substantially in the language of sec. 4366, R. S., and then said: "But the taking of human life . . . cannot be justified by some slight appearance of danger. *Nothing short of actual, pressing necessity*

*will justify the taking of human life in self-defense.* The danger
which will justify such killing must be actual, present, urgent, to
the apprehension of the defendant; and if the defendant was in
fault in creating the situation of danger, his right of self-defense
does not arise until he shall have done his utmost to avoid the ne-
cessity of killing his assailant. . . . Having done that, and fail-
ing, he may defend himself, even to the killing of his assailant, if
that shall reasonably seem to him to be reasonably necessary; and
he may act upon reasonable apprehension of imminent danger."
*Held,* that this charge, taken as a whole, was correct and not mis-
leading, although the sentence italicised, had it stood alone, would
have been erroneous.

ERROR to the Circuit Court for *Vernon* County.

An information in due form was filed in the circuit court
for Monroe county by the district attorney of that county,
charging that on February 9, 1889, at said county, *John T.
Richards* did feloniously kill and murder one John G.
Mooney by stabbing him with a knife, with a premeditated
design by *Richards* to effect Mooney's ·death. The place
of trial was changed to Vernon county. The accused was
tried on the information in the circuit court for Vernon
county, in October 1890, and convicted of murder in the
first degree, as charged in the information. The court de-
nied a motion for a new trial, and sentenced the accused to
imprisonment in the state prison for life. He has sued out
a writ of error from this court to obtain a review and re-
versal of the judgment.

The case is further stated in the opinion, in connection
with the statement and discussion of the several errors as-
signed by the plaintiff in error.

For the plaintiff in error there was a brief by *Morrow
& Masters* and *Bleekman & Bloomingdale,* and oral argu-
ment by *A. E. Bleekman* and *J. M. Morrow.* They con-
tended, *inter alia,* that the incompetency of a wife to give
testimony against her husband extends to the making of
a complaint charging him with an offense. *Thomas v.*

*State*, 14 Tex. App. 70; 5 Crim. L. Mag. 733; *People v. Sebring*, 66 Mich. 705; *Comm. ex rel. Boyd v. The Jailer*, 1 Grant Cas. 218; 14 Crim. L. Mag. 13. While the plaintiff in error might have waived an examination, he could not waive this salutary rule which the law interposes in his behalf. The rule is so inviolable that no consent will authorize the breach of it. 2 Kent's Comm. 178; 3 Crim. L. Mag. 155–158. It was error to admit testimony of the statements of plaintiff in error's wife, claimed to have been made in his presence. *Comm. v. Kenney*, 12 Met. 235; *Comm. v. Harvey*, 1 Gray, 487; *Comm. v. Galavan*, 9 id. 271; *Comm. v. Brailey*, 134 Mass. 527; *Lanergan v. People*, 39 N. Y. 39; *Vail v. Strong*, 10 Vt. 457; *Gale v. Lincoln*, 11 id. 152; *Mattocks v. Lyman & Cole*, 16 id. 113; 7 Am. & Eng. Ency. of Law, 55; 9 id. 339; 1 Greenl. Ev. (14th ed.), sec. 258, note *a*, and sec. 199.

For the defendant in error there was a brief by the *Attorney General* and *J. M. Clancey*, Assistant Attorney General, and a separate brief signed by *R. A. Richards*, District Attorney for Monroe county, and said to be by *D. F. Jones*, ex-District Attorney; and the cause was argued orally by the *Attorney General* and *Mr. Jones*. To the point that the statements made by Mrs. Richards in the presence of the plaintiff in error, not contradicted or denied by him, were properly admitted, they cited 1 Greenl. Ev. secs. 197–215; *Rex v. Smithies*, 5 Car. & P. 332; *Rex v. Bartlett*, 7 id. 832; *People v. McCrea*, 32 Cal. 98.

The following opinion was filed February 23, 1892:

Lyon, C. J. 1. The original complaint against plaintiff in error for the murder of Mooney was made to a justice of the peace by Lucinda J. Richards, the wife of plaintiff in error, and mother of Mooney, the deceased. A warrant was issued by the justice on such complaint for the arrest of the accused, and he was afterwards arrested thereon and

Richards vs. The State.

brought before the justice.   He waived an examination, and was held for trial in the circuit court.   Thereupon the district attorney filed the above-mentioned information, and the accused was arraigned in the circuit court for Monroe county, and pleaded " not guilty " to the charge in the information.

When the case was called for trial in the Vernon county circuit court, to which it had been removed, the accused asked leave to withdraw his plea of " not guilty," and to interpose a plea in abatement of the information, setting forth that such complaint was made by his wife, and hence that his arrest and examination were null and void, and the information filed against him unauthorized by law.   The court refused to grant such leave, and the trial of the issue made by the information and the plea of " not guilty " was had, and the accused was convicted of the offense charged. Such refusal is the first error assigned.

It is provided by statute that no failure or omission of a preliminary examination shall in any case invalidate any information in any court unless the defendant shall take advantage of such failure or omission by a plea in abatement before pleading to the merits.   R. S. sec. 4654.

Assuming (but not deciding) that there was a failure or omission of a legal examination, the accused waived the same by pleading to the merits before he offered or attempted to interpose the plea in abatement.   His application, after such waiver, for leave to withdraw his plea in bar and to interpose such plea in abatement, was therefore addressed to the sound discretion of the circuit court, and the refusal of the court to grant such leave cannot properly be held erroneous unless there was a clear abuse of discretion involved in the ruling.   Considering that the application was delayed until the cause was called for trial and the prosecution had been put to the expense of preparing for trial, and considering also that, had the application been granted and

. Richards vs. The State.

had judgment gone for the accused on the dilatory plea, it would not have barred — presumably would not have prevented — the institution of another prosecution for the same crime, we are unable to say that the denial of the application was an abuse of discretion.   On the contrary, under the circumstances of the case, we think it was a very proper exercise of its discretion by the circuit court.

2. Under ch. 354, Laws of 1887 (S. & B. Ann. Stats. sec. 752a), the court appointed Mr. Graves, an attorney at law, to assist the district attorney in the prosecution, and Mr. Graves did so assist on the trial.   The court also permitted Mr. Button, the law partner of the district attorney, to assist in the prosecution.   Mr. Button did so at the request of the district attorney, and without fee or compensation therefor.   This was done against the objection of the accused, and error is assigned because Mr. Button was allowed to participate in the trial on the part of the prosecution.

Ch. 223, Laws of 1885 (S. & B. Ann. Stats. sec. 4504), provides that " the law partner of any district attorney may, at the request of the district attorney, without fee or compensation therefor, assist the district attorney in the prosecution of any case on the part of the state."   The point of the objection is that it was not competent for the court to appoint Mr. Graves to assist in the prosecution, and at the same time allow the partner of the district attorney also to assist therein.   We find no such restriction on the power of the court in the statute.   Indeed it is not entirely certain that the district attorney is not entitled, as matter of right, to the assistance of his partner; the services being rendered without compensation, and such partner being an attorney of the court.

3. The accused stabbed Mooney with a knife, in the house of the former, at about 11 o'clock on Friday evening, February 9th, and Mooney died of the wound the next Monday afternoon.   The accused was somewhat intoxi-

Richards vs. The State.

cated when he committed the deed, but knew what he was about at the time and during the remainder of the night. During that night Mrs. Richards, in the presence of the accused and several other persons, made statements of the circumstances of the stabbing, which, if true, showed that her husband was a murderer if Mooney should afterwards die. The statements were made in the house of the accused, in two rooms, each of moderate size, and under circumstances that the accused might have heard them. All the other persons present heard the statements, and they had no better opportunity to hear than had the accused. The latter did not deny the truth of such statements when the same were made. Proof of them was admitted, under objection, on the ground that, being unchallenged by the accused when made, they became his admissions by acquiescence, and that it was immaterial that the wife was not a competent witness in the case.

The rule is fairly to be deduced from the authorities cited to the point by the respective counsel that inculpatory statements, made in the presence and hearing of one accused of crime, which he, having opportunity to do so, does not deny, and the truth or falsity of which is within his personal knowledge, are admissions of the accused by acquiescence, and as such admissible in evidence, although such statements were made by a person not competent to testify in the case. The rule as stated is not seriously questioned by the learned counsel of the accused, but they maintain it does not sufficiently appear that the accused heard such statements of his wife, and therefore the rule is not applicable. As above stated, he was in the room with others who heard them when the statements were made. He was in possession of his faculties, was awake, and could hear. Every reasonable presumption is that he did hear the statements, although he testified that he did not. The point does not seem to have been made on the

trial that the accused did not hear the statements.   The objection to the testimony was placed upon the ground that it was inadmissible because the wife was not a competent witness in the case.   No suggestion was made to the court when the testimony was offered, or at any other time, so far as we are able to discover, that the testimony should be rejected because the accused did not hear the statements, and no instruction was asked founded upon that proposition. Under the circumstances, therefore, we think the court properly assumed that the accused heard the statements, and that it was not error to admit the testimony.   Even were its admission irregular, we find no exception which reaches the irregularity.

4. Two statements made by Mooney,— one on Sunday next after he was stabbed, and the other on Monday, the day he died,— charging the accused with stabbing him without provocation, were received in evidence as his dying declarations.   Their admission is assigned for error.   It cannot be doubted that when these declarations were made Mooney was *in extremis* and knew that he must die in a very short time.   He did die a few hours after making the last declaration, and the day after the first was made. The case is thus within the rule laid down in *State v. Martin*, 30 Wis. 223, and *State v. Dickinson*, 41 Wis. 308; and the declarations were admissible.   The principal objection made to them is that they are conflicting.   Suppose they are, still they are dying declarations within the rule.   If inconsistent, that may discredit them with the jury, but does not exclude them as testimony. . But we do not discover any serious discrepancy between them, and we think the court did not err when he said to the jury concerning them that " the mere fact that the deceased, in such statements, may have stated the circumstances at one time more in detail than at another time, is not to be considered either as contradictory or inconsistent."

5. Thomas J. Richards, a son of the accused, and half-brother of the deceased, was examined as a witness on the part of the prosecution. He was in the house of the accused the night Mooney was stabbed, but not present when it occurred. On cross-examination he was asked whether he saw Mooney have a knife with which he was whittling on that evening. He answered in the negative. He had not been interrogated on that subject in his direct examination. After the prosecution rested, Thomas was called as a witness on behalf of the accused, and examined further in respect to Mooney having a knife at that time, and concerning other matters, none of which related to his testimony in chief when examined as a witness for the prosecution.

Another witness was then called for the defense, and it was sought to elicit testimony from him to impeach that of Thomas by showing that Thomas had theretofore made statements to witness inconsistent with his testimony concerning the knife. The court ruled that when Thomas gave such testimony the accused had made him his own witness, and could not be permitted to impeach his testimony by showing that he had made different statements out of court concerning the same matter. The ruling was correct. While a party may show that the testimony of his own witness is incorrect or false in a matter material to the issue, he cannot be allowed to impeach such witness by direct testimony either of his bad reputation for veracity or that he testifies to one thing in court and asserts the falsity of it out of court. This rule is elementary, and the testimony of Thomas which the defense thus sought to impeach comes within it.

6. Remarks of counsel for the prosecution in their arguments to the jury are subjects of criticism and exceptions. Thus Mr. Button started to make an argument adverse to the accused, based upon the fact that the latter alone had

Richards vs. The State.

the right to prove his previous good character, and had not done so. On objection the court held such remarks improper, and that line of argument was at once abandoned.

It appeared in evidence that Mrs. Richards died before the trial. Mr. Graves, when commenting in his argument upon a certain threat alleged to have been made by the accused, said: "As the result of that threat two of the members of that family are dead." Counsel referred to John G. Mooney and his mother as such victims. Counsel for the accused objected to such remarks on the ground that there was no proof that the death of Mooney's mother was the result of the threat. The court said there was no such proof, and the matter was dropped.

Mr. Graves also asserted his belief that, were the accused set free, the lives of Mooney's two brothers would not be safe. On objection, the court promptly ruled that the remark was improper.

During the argument counsel for the prosecution invited the jury to examine the overcoat of the accused, which had been exhibited in the presence of the jury during the trial, to see if they could find blood-stains upon it. The purpose of this was to refute the theory of the defense that certain cuts in the coat were made by Mooney with a knife, and that the accused was cut with the knife, and acted in self-defense in what he did. The court ruled this to be proper, and we see no good reason why it was not.

We conclude that none of the exceptions based upon the above proceedings are well taken.

7. It only remains to consider the charge of the learned circuit judge to the jury, and his refusal to give certain instructions proposed on behalf of the accused. The charge is a clear, terse statement of the law applicable to the case. But one sentence in it calls for special notice. The court gave the law of self-defense substantially in the language

of the statute on that subject (R. S. sec. 4366), and then said: "But the taking of human life is a matter of such terrible significance that it cannot be justified by some slight appearance of danger. Nothing short of actual, pressing necessity will justify the taking of human life in self-defense. The danger which will justify such killing must be actual, present, urgent, to the apprehension of the defendant; and if the defendant was in fault in creating the situation of danger, his right of self-defense does not arise until he shall have done his utmost to avoid the necessity of killing his assailant. . . . Having done that, and failing, he may defend himself, even to the killing of his assailant, if that shall reasonably seem to him to be reasonably necessary; and he may act upon reasonable apprehension of imminent danger."

It is argued that the sentence, "nothing short of actual, pressing necessity will justify the taking of human life in self-defense," is an incorrect statement of the law. Standing by itself it does not state the law correctly, for it ignores the rule that the assailed party may act on appearances and be justified, even though such appearances turned out to have been deceptive. But the sentence does not stand by itself. The next sentence unmistakably explains the meaning of the first to be that it is sufficient to justify the homicide if the necessity therefor is actual and pressing, "to the apprehension of the defendant." We think it quite impossible for a man of ordinary intelligence to be misled by the charge as to the law of self-defense, especially when the judge a little later in his charge (as above quoted) repeated the rule that the assailed party may act on appearances. That portion of the charge to the effect that, if the accused created the situation of danger, he should do his utmost to avoid the necessity of killing his assailant before he could invoke the

right of self-defense as a justification of his act, is a correct rule of law, having its foundation in principles of justice and in the tenderness of the law in favor of human life.

A series of instructions — twenty-one in number, some of them quite elaborate — was proposed by counsel for the accused, but none of them were given except such as were contained in the general charge of the court. These proposed instructions, extending through several pages of the printed case, cover minutely a great many features of the case, and include many rules or principles of criminal law which are elementary and universally recognized. These proposed instructions have been examined in connection with the general charge, and we think the latter contains the substance of everything in the former which ought to have been given. We find no error in the instructions given, or in the refusal to give those proposed.

8. Other exceptions were discussed more or less by counsel. It is unnecessary to make any statement of them here. Most of them do not seem to be very important, at least not controlling in the case; and those which may be considered material, and which state the law correctly, we think are sufficiently given in the general charge.

*By the Court.*— The judgment of the circuit court is affirmed.

A motion for a rehearing was denied May 3, 1892.