STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

V.

Augustus MARSHALL, Defendant-Appellant.

Supreme Court

*No. 81–1798–CR. Argued March 28, 1983.—Decided July 1, 1983.*

(Also reported in 335 N.W.2d 612.)

For the petitioner the cause was argued by *Michael R. Klos,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

For the appellant there were briefs and oral argument by *Donna L. Hintze,* assistant state public defender.

LOUIS J. CECI, J. The defendant, Augustus Marshall (Marshall), was convicted of one count of first-degree murder, party to a crime, contrary to secs. 940.01 and 939.05, Stats., and two counts of attempted murder, party to a crime, contrary to secs. 939.32, 940.01, and 939.05. Marshall's motion for a new trial was denied by the Honorable MICHAEL D. GUOLEE, Circuit Judge of Milwaukee County.

This review of an unpublished decision of the court of appeals presents the question of the admissibility of testimony by Arthur Johnson (Johnson) regarding a statement allegedly made by Elijah Jackson (Jackson) to the defendant after the murder occurred. Johnson testified that Marshall wanted Jackson to give him (Marshall) some money. According to Johnson, Jackson then angrily informed Marshall that he would not pay Marshall because Marshall had "hit" the wrong guy. Johnson testified that Marshall responded that he had put his life on the line anyway and that everyone started shooting, and he had to shoot his way out of the place. This testimony was received over Marshall's hearsay objection.

The court of appeals concluded that the confrontation clause of the Sixth Amendment[1] barred Johnson's testimony about the Marshall-Jackson conversation, reversed the judgment of conviction and order denying postconviction relief, and remanded for a new trial. Because we conclude that the evidence contained suffici-

---

[1] Amendment VI of the United States Constitution provides:
"In all criminal prosecutions, the accused shall enjoy the right
. . . to be confronted with the witnesses against him . . ."

ent indicia of reliability, we reverse and remand to the court of appeals for its decision on the remaining issues Marshall raised at that level.

During the morning hours of October 28, 1979, at an after-hours place in Milwaukee, there was an exchange of gunfire which ultimately resulted in the death of Ryan Kent Baxter and the wounding of Mary Polk and Eddie Young.

During the trial before a jury, the prosecution's theory was that the defendant was a contract killer out to kill Sonny Carter, but, due to several other persons becoming involved in the incident, the wrong people were shot. At Marshall's trial, several people gave testimony about the facts surrounding the shootings. While there were some differences in their accounts of what transpired at the after-hours place that morning, there was general agreement among the eyewitnesses who testified regarding the following facts.

According to the eyewitnesses who testified, the shootings at Groovy People's International, the after-hours place, occurred at approximately 8:00 a.m. on October 28, 1979. The defendant and Bruce Jones, both armed with pistols, entered the barroom area of the club from the hallway and stood near the bar, about one or two feet from Baxter, one of the victims. The two men talked to Baxter. Soon thereafter, Marshall grabbed Baxter, and two shots were fired. One seemed to be louder than the other, as though it were fired from a different gun. The club patrons scrambled for cover in the corner and behind the bar.

After Baxter fell to the floor, Eddie Young, one of the patrons, fired one or two shots toward the two men with his own weapon. The two men then fired a series of shots; Young and Mary Polk were wounded as a result.

One witness, Adolph Tate, testified that before the shootings he was on the second floor of the club, where

he saw Marshall, Bruce Jones, and an unidentified third man surround Sonny Carter. Tate testified that Arthur Johnson was not the third man. All three men had guns drawn. They escorted Carter down the stairs. Marshall told Tate to stay out of it and not to follow them downstairs. A short time later, Tate heard a couple of shots and then several more.

Upon hearing the shots, Tate proceeded to a porch area on the roof near the front of the building. From there he observed Marshall, Jones, and the unidentified third man jump out of a side window on the first level and leave in a late-model, black Cadillac with Wisconsin license plates. Tate explained that the club's doors were kept locked so that one had to push a "bottom button" in order to open the door when exiting.

Arthur Johnson testified for the prosecution regarding a statement he gave to police while he was imprisoned. The substance of that statement formed the basis for his testimony at Marshall's trial.

Johnson testified that at the time in question, he owned a black 1974 Cadillac Seville, which was registered in his wife's name, and that he was a fugitive from a halfway house in Milwaukee. On a Saturday evening, October 27, 1979, he met Marshall and Jones at a disco club, where Jones asked if they could borrow his car for $100 to go to Racine. Johnson agreed, and the two men dropped him off at his home, where he remained for the rest of the evening.

Marshall and Jones returned the car to Johnson's home the following morning and asked him to drive them to their next destination. Johnson drove them and a third man, "Sly," to the residence of Elijah Jackson. Johnson had previously become acquainted with Jackson when he (Johnson) made drug purchases. All four men entered the house, and Johnson seated himself in a separate area of a large room while the others talked. Johnson testified that the others talked about a shooting, and

Jackson appeared to be angry as he told Marshall that he (Jackson) could not pay him $1,000, since he hit the wrong guy, not Sonny Carter who was supposed to get shot. According to Johnson, it appeared Carter had "beat" Jackson out of some drugs, and Jackson had hired some people to "take care of" Carter. When Jackson said that he could not pay Marshall that kind of money, since Marshall had hit the wrong guy, Marshall responded that he had put his life on the line anyway and that everyone had started shooting and he had to shoot his way out of there. It was Johnson's understanding that Jackson had informed Marshall, Jones, and Sly that Carter would be at Fishman's (another name for Groovy People's International) and that they were expected to kill him. Johnson later drove Marshall, Jones, and Sly to a second location where some phone calls were made. After taking them back to Jackson's house, Johnson went home alone.

Marshall took the stand in his own defense and gave a different account of what happened. He testified that on the morning in question, he and Jones were out with their girl friends when they met Johnson and his wife and sister at about 1:30 a.m. Johnson's sister was taken home, and the three couples later used Johnson's car to go to Groovy People's International. They went upstairs, where Jones talked to Sonny Carter about a cocaine sale. Marshall, Jones, and Johnson then left the club and went to another house to get some cocaine which Carter had agreed to purchase. Jones picked up a .22 caliber pistol, and Johnson said he was going to get a gun from his trunk. When they returned to the club, Carter refused to buy the cocaine. Jones then pulled his pistol and said he was taking Carter outside to beat him up. Marshall denied having a gun, but admitted telling Adolph Tate and others to stay out of it.

According to Marshall, Johnson stayed with Carter while he and Jones went to the back room to find some-

one with a key. Marshall testified that he picked up Baxter's gun, which was dropped during Baxter's struggle with Jones. He stated that he only fired the gun once—at a man in the corner who was firing at him. Johnson testified that neither he nor Jones shot Baxter.

According to Marshall, he and Jones kicked out a window and ran to the car, where they met Johnson. Marshall testified that they did not go to Elijah Jackson's house and that he had never discussed with Jackson either killing Carter or taking out a contract on anyone.

At trial, the defense counsel objected that Johnson's testimony about what Jackson said to Marshall was inadmissible because it was hearsay. No objection on any other basis was made, and the prosecution did not come forth with its own theory of admissibility. The trial court ruled that the evidence was not hearsay because it was not offered to prove the truth of the matter asserted. The trial court reasoned that Johnson's testimony concerning Jackson's statements would be admitted to explain the context of Marshall's statements:

"All right. The Court allowed that in. I think it's part of the general background of why a conversation of this type would take place where somebody was hired to kill somebody and comments. The jury will determine whether or not this is a fact, whether or not they'll believe Mr. Johnson's testimony, but it goes in as the whole scenario of why somebody would be involved in contract killings and that type of thing, so the Court allowed it for that reason. It goes to the total picture, and I think it is relevant to that issue. The jury will be the ultimate determiner of the credibility of that witness and whether or not that actually happened."

At the close of the trial, the jury returned verdicts finding Marshall guilty of one count of first-degree murder and two counts of attempted murder.

Marshall appealed, arguing that Johnson's testimony concerning Jackson's statements in the Marshall-Jack-

son conversation was hearsay. In the alternative, he contended that even if the statements did comport with Wisconsin's hearsay rule, the confrontation clause of the Sixth Amendment barred Johnson's testimony on this point.[2]

The court of appeals reversed the judgment and order of the trial court and remanded the matter for a new trial. The court held that Johnson's testimony regarding statements made by Jackson was "clearly hearsay" because, in substance, the statement was allowed into evidence for the jury to determine the truth of the statement. The court of appeals further held that even if the statement fell within sec. 908.01(4)(b)2, Stats. (what the court termed the "adoptive admission exception"), its admission into evidence violated Marshall's right to confrontation. The court concluded that the Marshall-Jackson conversation was unclear and confusing and that "indicia of reliability and trustworthiness were not sufficiently present to clear the confrontation clause hurdle. . . ."

The state argues that the trial court was correct in holding that Johnson's testimony regarding Elijah Jackson's statement was not hearsay, because it was not offered to prove the truth of the matter asserted by Jackson. We agree with the court of appeals that such testimony clearly falls within the definition of hearsay. Section 908.01(3), Stats., provides:

---

[2] The defendant made four other arguments in his brief filed with the court of appeals. First, he argued that a new trial was warranted because of newly discovered evidence. Second, he asserted that he was denied his constitutional right to due process and a unanimous jury verdict on the first-degree murder charge when a general verdict was submitted to the jury without an additional tailored unanimity instruction. He also contended that he was denied his right to effective assistance of counsel. Finally, he argued that he should be granted a new trial in the interests of justice.

"**908.01 Definitions.** The following definitions apply under this chapter:

"...

"(3) HEARSAY. 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

The testimony concerning Jackson's statement to Marshall that Jackson would not pay Marshall anything because he (Marshall) hit the wrong person was offered to show that Marshall had the requisite intent to commit first-degree murder. Jackson's statements were offered as proof of the facts which they asserted, since it was the substance of these statements that explained the admissible statements made by Marshall.

The state argues, however, that Jackson's statements qualify as nonhearsay, pursuant to the "adoptive admissions exception" in sec. 908.01(4)(b)2, Stats., which provides:

"**908.01 Definitions.** . . .

"...

"(4) STATEMENTS WHICH ARE NOT HEARSAY. A statement is not hearsay if:

"...

"(b) *Admission by party opponent.* The statement is offered against a party and is:

"...

"2. A statement of which he has manifested his adoption or belief in its truth . . ."

The express language of the statute makes it clear that adoptive admissions have been defined out of the hearsay rule.[3] This court in *Caccitolo v. State,* 69 Wis. 2d 110, explained why such statements should normally be admissible:

[3] This court has referred to the rule on adoptive admissions as an exception to the hearsay rule. *See, Caccitolo v. State,* 69 Wis. 2d 102, 110, 230 N.W.2d 139 (1975).

"[I]f a statement is made in the presence of . . . the defendant . . . which would ordinarily be denied by [the defendant] if it were not true and he does not deny it, then he has foregone the opportunity to dispute the statement. . . . Since the person whose interest was damaged by the statement did not avail himself of the opportunity to refute it, it is presumably trustworthy."

The court of appeals determined that the Marshall-Jackson conversation, as reported by Johnson, was unclear and confusing. We disagree. Jackson accused the defendant of killing someone ("the wrong guy"). One would certainly expect a denial from an innocent party accused of something as serious as murder. We believe that the situation in the case before us falls squarely within the purview of sec. 908.01(4)(b)2, Stats.

However, even though Elijah Jackson's statement was an adoptive admission and was, therefore, pursuant to sec. 908.01(4)(b)2, Stats., defined out of the hearsay rule, confrontation rules nevertheless apply. *See, State v. Dorcey,* 103 Wis. 2d 152, 307 N.W.2d 612 (1981); *Vogel v. State,* 96 Wis. 2d 372, 291 N.W.2d 838 (1980); *State v. Lenarchick,* 74 Wis. 2d 425, 247 N.W.2d 80 (1976). As the defendant notes, courts have repeatedly held that hearsay rules are not to be equated with confrontation and that admissibility under hearsay rules will not guarantee admissibility under the confrontation clause. *California v. Green,* 399 U.S. 149, 155-56 (1970); *State v. Bauer,* 109 Wis. 2d 204, 210, 325 N.W.2d 857 (1982); *Hagenkord v. State,* 100 Wis. 2d 452, 471, 302 N.W.2d 421 (1981); *Bergeron v. State,* 85 Wis. 2d 595, 616, 271 N.W.2d 386 (1978). Thus, to meet the test for admissibility under the confrontation clause, the declarant must be unavailable as a witness and the statement must

bear sufficient indicia of reliability. *Ohio v. Roberts*, 448 U.S. 56 (1980).[4]

Under the first prong of the test, unavailability of the declarant, the prosecution must make a good-faith effort to obtain the attendance of the declarant. *Id.* at 74; *State v. Zellmer*, 100 Wis. 2d 136, 144, 301 N.W.2d 209 (1981). At Marshall's trial, the prosecution made no showing that Jackson was unavailable as a witness. However, the defense counsel did not make an objection based on confrontation grounds; there was only a continuing hearsay objection. As we have previously discussed, the satisfaction of the hearsay requirements and satisfaction of the confrontation rule are not necessarily congruent. *State v. Lenarchick*, 74 Wis. 2d at 437. In order for the prosecution to be made aware that Jackson's unavailability was a pertinent factor, objections on constitutional grounds should have been made. *See, Hagenkord v. State*, 100 Wis. 2d at 467–68. Therefore, we believe the defendant has waived any unavailability argument on appeal.

"We have frequently said that even the claim of a constitutional right will be deemed waived unless timely raised in the trial court. . . . We have, however, concluded that this court may nevertheless decide a constitutional question not raised below if it appears in the interests of justice to do so and where there are no factual issues that need resolution." *Bradley v. State*, 36 Wis. 2d 345, 359–59a, 153 N.W.2d 38 (1967) (citations omitted) ; *Maclin v. State*, 92 Wis. 2d 323, 328–29, 284 N.W.2d 661 (1979).

[4] It should be noted that the declarant's unavailability is not an absolute prerequisite for compliance with the confrontation clause. As we stated in *Hagenkord v. State*, 100 Wis. 2d at 473, "prosecutorial failure to establish the unavailability of a witness . . . does not necessarily lead to the conclusion that a defendant's confrontation rights were violated." *See also, State v. Bauer*, 109 Wis. 2d at 212.

Since the defendant in the case before us failed to raise the confrontation issue at trial, the prosecutor was under no obligation to subpoena Elijah Jackson. Even if he had done so, Jackson might have formally invoked his Fifth Amendment privilege. Since Jackson's unavailability is a factual issue that requires resolution, Marshall has waived this question on appeal; however, he has not waived his entire confrontation argument.

In order to be nonviolative of a defendant's confrontation rights, the evidence must bear adequate indicia of reliability.

"Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness." *Ohio v. Roberts,* 448 U.S. at 66.

We recently gave further explanation to this rule in *State v. Dorcey,* 103 Wis. 2d 152, and *State v. Bauer,* 109 Wis. 2d 204. We stated in *Bauer,* at 213–14:

"While this inference of reliability is strong, evidence falling within a firmly rooted hearsay exception is not admissible per se. The trial court must still examine each case to determine whether there are unusual circumstances which may warrant exclusion of the evidence. If no such unusual circumstance exists, the evidence may properly be admitted. 'Where unusual circumstances are apparent, the court may have reason to inquire into whether a meaningful confrontation was indeed afforded a defendant.' *Nabbefeld v. State,* 83 Wis. 2d at 527. However, notwithstanding the existence of unusual circumstances, the evidence may be admitted where there was [sic] been 'substantial compliance with the purposes behind the confrontation requirement.' *California v. Green,* 399 U.S. at 166. Those purposes are satisfied when the trier of fact has a reasonable basis for evaluating the truthfulness of the prior statement. *Nabbefeld v. State,* 83 Wis. 2d at 524."

We believe that the evidence in the instant case meets the standards for reliability and trustworthiness set forth in *Ohio v. Roberts*. First, the rule on adoptive admissions qualifies as a firmly rooted hearsay exception. *State v. Dorcey*, 103 Wis. 2d 152. The Federal Rules of Evidence also provide that an adoptive admission introduced against a party opponent is not hearsay. 28 U.S.C.A. Rule 801(d)(2)(B).[5] Moreover, the rule is long established in Wisconsin. This court explained the rule on adoptive admissions in *Richards v. State*, 82 Wis. 172, 178, 51 N.W. 652 (1892) :

"The rule is fairly to be deduced from the authorities cited to the point by the respective counsel that inculpatory statements, made in the presence and hearing of one accused of crime, which he, having opportunity to do so, does not deny, and the truth or falsity of which is within his personal knowledge, are admissions of the accused by acquiescence, and as such admissible in evidence. . . ."[6]

Second, the adoptive admission in this case contains sufficient indicia of reliability. Marshall verbally adopted Jackson's statement that he had agreed to kill some-

---

[5] Federal Rule of Evidence 801(d)(2)(B) provides:

"Rule 801. Definitions

"The following definitions apply under this article:

". . .

"(d) *Statements which are not hearsay.* A statement is not hearsay if—

". . .

"(2) *Admission by party-opponent.* The statement is offered against a party and is . . . (B) a statement of which he has manifested his adoption or belief in its truth. . . ."

[6] This court in *McCormick v. State*, 181 Wis. 261, 270, 194 N.W. 347 (1923), reaffirmed the rule on adoptive admissions but noted that admissions *by silence* should usually be received with caution. *See also, Weinstein's Evidence*, vol. 4 (1981), § 801(d)(2) (B) [01], "Admissions: Adoptive," at 801–144–801–145.

one, but "hit" the wrong person. A false accusation of a crime as serious as murder would certainly call for a denial. The inference from this conversation, that Marshall was involved in the shootings at the after-hours place, was corroborated by other witnesses.

Under this "exception" to the hearsay rule, the accused has already had an opportunity to confront an accuser. Since Marshall acknowledged the existence of a contract to kill Carter when he demanded payment from Jackson, the primary question at trial was not whether Elijah Jackson was credible. The defendant does not dispute Jackson's credibility; he denies that he ever had a conversation with Jackson while Johnson was present. The issue was whether Johnson's testimony that the Marshall-Jackson conversation took place at all was credible. Johnson was a witness at the trial and was subject to extensive cross-examination by the defendant. Accordingly, we hold that Marshall's confrontation rights were not violated.

In addition to the confrontation issue, the defendant raised four other issues at the court of appeals. Because of its disposition of the case on confrontation grounds, these other issues were not considered by the court of appeals. It is, therefore, appropriate to remand this case to the court of appeals for consideration of the unresolved issues. *State v. Derenne,* 102 Wis. 2d 38, 306 N.W. 2d 12 (1981) ; *State v. Bettinger,* 100 Wis. 2d 691, 699a, 303 N.W.2d 585 (1981).

*By the Court.*—The decision of the court of appeals is reversed and the cause remanded for further proceedings consistent with this opinion.

SHIRLEY S. ABRAHAMSON, J. (*concurring*). I agree with the majority that the testimony in issue in this case is hearsay, but that it is admissible because it

is excluded from the hearsay rule as an adoptive admission. I disagree with the majority's conclusion that admission of the testimony did not violate the defendant's constitutional right to confront and cross-examine the witnesses against him. I would remand the case to the court of appeals to determine whether this violation of the defendant's constitutional right was harmless beyond a reasonable doubt and to consider, if necessary, the other issues not yet decided.

The majority correctly points out that there is a two-part test for determining whether the confrontation clause has been satisfied: first, the declarant must be shown to be unavailable as a witness; second, the testimony admitted must be shown to have sufficient indicia of reliability. Pages 652, 653. The majority acknowledges that the first prong of the test has not been satisfied in this case, because there was no showing that the declarant was unavailable. The majority does not consider the question of unavailability, however, because the defendant "waived this question on appeal" since he did not raise the confrontation argument at the trial. Page 654.

I do not think this court should review, as a matter of discretion, only part of the constitutional issue in this case.[1] The requirement that the state show that the

[1] Even though the defendant did not raise the confrontation argument at trial and waived the right to assert on appeal that the state had not met the first prong of the confrontation clause test, the majority considers the second prong stating only that the defendant "has not waived his entire confrontation argument." Page 654. The majority cites no authority for this "partial waiver" doctrine. It appears that the majority relies on the rule of appellate practice that the defendant by failing to preserve the issue at the trial waived appellate review as a matter of right, but that this court may nevertheless review his arguments as a matter of discretion, *Manson v. State*, 101 Wis. 2d 413, 417, n. 2, 304 N.W.2d 729 (1981). The majority apparently chooses not to

hearsay declarant is "unavailable" is in most cases an indispensable part of the confrontation rule. *Ohio v. Roberts*, 448 U.S. 56, 74–75 (1980); *State v. Bauer*, 109 Wis. 2d 204, 210–211, 325 N.W.2d 857 (1982). The limited circumstances in which the court may dispense with the requirement of showing that the witness is unavailable are not present here. *Hagenkord v. State*, 100 Wis. 2d 452, 474–75, 302 N.W.2d 421 (1981); *State v. Olson*, 75 Wis. 2d 575, 591–93, 250 N.W.2d 12 (1977).

I disagree with the majority's conclusion on the second part of the confrontation test for two reasons. Neither adoptive admissions in general nor the testimony in this case meets the standards of truthworthiness and reliability set forth in *Ohio v. Roberts*.

This hearsay exception is not "firmly rooted" merely because it is "long established in Wisconsin." To determine whether an exception is "firmly rooted," the court should determine whether the hearsay exception guarantees that the evidence admitted is trustworthy and reliable to the degree necessary to satisfy the requirements of the confrontation clause. *State v. Bauer*, 109 Wis. 2d 204, 213, 325 N.W.2d 857 (1982); *State v. Dorcey*, 103 Wis. 2d 152, 170, 307 N.W.2d 612 (1981) (Abrahamson, J., dissenting).

exercise its discretion to review the unavailability half of the issue because its resolution would depend on the development of a factual record which was not made. The state was not notified at trial that it should prove unavailability. The majority apparently concludes that it would be unfair under the circumstances to hold against the state on appeal. The majority seems to exercise its discretion to review the second part of the confrontation issue because that half presents only a question of law. I think that the same problem that prevents the majority's consideration of the first half of the issue should also prevent its consideration of the second. As I shall explain later, the necessary record was also not made on the second part of the issue.

The adoptive admission hearsay exclusion does not withstand rigorous constitutional analysis. Allowing admissions by silence appears to be based on the idea that he who is silent appears to consent (*"qui tacet consentire videtur"*). Courts and commentators uniformly stress that the legal maxim does not guarantee the reliability of an adoptive admission consisting of silence. *Gullickson v. State,* 256 Wis. 407, 411, 41 N.W.2d 291 (1950). As Judge Weinstein notes, the theory underlying the admission—"the normal human reaction would be to deny such a statement if untrue"—is a generalization, the truth of which must be tested in each case. The reliability of an admission by silence "turns on a number of factors including the circumstances in which the accusation is made, by whom it is made, and the physical and psychological state of the particular person involved." 4 Weinstein's *Evidence* par. 801(d)(2)(B) [01], p. 801–145 (1981). Testimony as to defendant's silence "should be received and applied with caution—especially where the statements have been made, not by a party to the controversy, but by a stranger thereto." Jones, *The Law of Evidence,* sec. 13:49, p. 526 (1982), note omitted.

Even if the adoptive admission hearsay exclusion itself does not guarantee that the evidence is truthworthy and reliable, the evidence may satisfy the confrontation clause because the evidence may be admitted upon a showing of "particularized guarantees of trustworthiness." *State v. Bauer, supra,* 109 Wis. 2d at 214; *Hagenkord v. State, supra,* 100 Wis. 2d at 476; *State v. Olson, supra,* 75 Wis. 2d 589–91. Such a particularized showing was not made in this case. The admission in this case was the defendant's non-response to a statement implying that the defendant was part of a contract to kill. The majority rests primarily on the nature of the statement. The majority reasons that anyone who is innocent

of being part of a contract to kill would certainly not be silent. That reasoning is troublesome in this case because, as the court of appeals pointed out, the testimony about the defendant's conversation with the absent declarant is unclear and confusing.

The majority also states that the statement was corroborated because other witnesses testified that the defendant was involved in the shootings. That may be true, but the other testimony does not corroborate the specific inference of the statement that the defendant was part of a contract murder which may have supplied the requisite intent for first-degree murder.

The majority further reasons that the defendant already had an opportunity to confront the absent declarant. I fail to see how the defendant's being in the presence of the person who made the statements which the defendant purportedly adopted amounts to the defendant's opportunity, provided for in the federal and state constitutions as part of the accused's right to a fair trial, to confront the witnesses. If the defendant's opportunity to confront the nontestifying witness at some point prior to trial satisfies the confrontation clause, then the constitutional right will be meaningless in any case where the defendant "adopts" by silence a statement of the declarant while in the declarant's presence. This court and the United States Supreme Court have consistently used the term "confront" to mean confront the witness in a setting in which the witness is subject to adversarial cross-examination. This court has also stated that "[t]here is some question as to whether the mere opportunity to cross-examine satisfies the confrontation clause." *State v. Bauer, supra,* 109 Wis. 2d at 220, n. 11.

It is also important to remember that in this case the circuit court did not admit the disputed testimony as hearsay, a hearsay exception, or hearsay satisfied. *State v. Alles,* 106 Wis. 2d 368, 379, n. 3, 316 N.W.2d

378 (1982). It admitted the entire testimony of the witness to provide a contextual background for the defendant's statements. Consequently the circuit court never determined, as a preliminary matter, whether sufficient foundational facts had been introduced to allow the jury reasonably to infer that the "accusatory" statement was made in the defendant's presence, that the defendant understood the statement and had an opportunity to deny it, and that the circumstances were such that an innocent defendant would normally be induced to respond. 4 Wigmore, *Evidence* sec. 1071 (Chadbourn rev. 1972).

Moreover, the circuit court did not instruct the jury how it should consider the adoptive admission evidence. I believe that ordinarily in cases where there is evidence admitted as an adoptive admission the jury should be instructed that the adoptive admission must be based on a proper foundation of facts (described above), that the accusatory statements are not received for the purpose of proving their truth, and that unless the jury finds that the defendant's conduct indicated an admission that the accusatory statement was true the jury should disregard the statement.[2] *People v. Vindiola*, 158 Cal. Rptr. 6, 12, 13, 96 Cal. App 3d 384 (1979). *See also* 4 Wigmore, *Evidence* sec. 1071 (Chadbourn rev. 1972).

Because the admission of this evidence violated the defendant's rights for the reasons stated, I would remand to the court of appeals to allow the parties to brief

[2] "Despite the offhand appeal of this kind of evidence, the courts have often suggested that it be received with caution and have surrounded it with various restrictions and safeguards. . . . [W]hile in theory the statement is not offered as proof of its contents but rather to show what the party acquiesced in, the distinction is indeed a subtle one; the statement is ordinarily very damaging, and substantial assurances are required that acquiescence did in fact occur." McCormick, *Law of Evidence* sec. 270, p. 652 (2d ed. 1971) (notes omitted).

the question of whether the error was harmless, for a decision on that issue, and if necessary for decision on the other issues raised on appeal.