COURT OF APPEALS
DECISION
DATED AND FILED

May 28, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1933-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2018CF3599

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

MARK BENJAMIN EVANS,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: JEFFREY A. WAGNER, Judge. *Affirmed.*

Before White, C.J., Donald, P.J., and Geenen, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Mark Benjamin Evans appeals from a judgment, entered on a jury's verdicts, convicting him of one count of second-degree sexual

assault with the use of force, one misdemeanor count of violating a restraining order, and one count of misdemeanor bail jumping. He also appeals from an order denying his postconviction motion. Evans contends that: (1) the trial court erred when it granted the State's motion to admit other-acts evidence; (2) the admission of that evidence violated the hearsay rule and his right to confrontation; and (3) the State withheld exculpatory information. We reject these arguments and affirm the judgment and order.

## BACKGROUND

¶2 Evans and L.J. have known each other for more than 35 years; Evans was the father of L.J.'s then-34-year-old son and had been living with L.J. "a year or two" preceding the events in this case. In the early morning of July 16, 2018, Evans started an argument with L.J., calling her a liar. He strangled her and punched her in the jaw, head, and mouth, causing pain and injury. Evans then pinned L.J. to the bed and told her that if she got out of line again, he would beat her. Evans fell asleep, and L.J. stayed in the bed out of fear. When Evans woke up, he removed L.J.'s pants and underwear. He put his fingers in her vagina, then put his penis in her vagina. When Evans left for work, L.J. went to the nearby police station, accompanied by her son, and reported the physical attack but not the sexual assault. Evans was charged with misdemeanor battery and disorderly conduct, both as domestic abuse incidents, in Milwaukee County Circuit Court Case No. 2018CM2292.

¶3 On July 17, 2018, L.J. was granted a temporary restraining order against Evans. On July 22, 2018, Evans went with a police escort to retrieve his belongings from L.J.'s home. After the police left, Evans returned and parked outside L.J.'s house, staring at her for approximately 20 seconds. L.J. called

police and reported the incident. On July 23, 2018, L.J. was interviewed as part of a charging conference. In this meeting, L.J. disclosed the sexual assault. She also told the interviewers that she had gone to the hospital after the assault and explained that she did not initially report the sexual assault to police because her son was with her. Evans was charged in Milwaukee County Circuit Court Case No. 2018CF3599 with second-degree sexual assault, violating a temporary restraining order as a domestic abuse incident, and misdemeanor bail jumping as a domestic abuse incident.

¶4 Prior to trial, the State moved to join Evans' two cases; that request was granted. The State also filed a motion to admit other-acts evidence. Specifically, the State sought to admit Evans' three prior convictions for domestic violence sexual assaults, which the State planned to introduce through certified copies of the criminal complaints and judgments of conviction. After a hearing, the trial court granted the other-acts motion. The cases were tried to a jury, which convicted Evans on all five counts in the two cases. The trial court sentenced Evans to 40 years' imprisonment for the sexual assault, plus 9 months' imprisonment on each of the 4 remaining charges, to be served concurrently.

¶5 Evans filed a postconviction motion. He raised three issues, claiming that (1) the trial court's admission of the other-acts evidence violated his rights to due process and a fair trial; (2) the criminal complaints used to introduce the other-acts evidence contained inadmissible hearsay and their use violated his right of confrontation; and (3) the State failed to disclose favorable, exculpatory

material. The trial court denied the motion without a hearing. Evans appeals.[1] Additional facts will be discussed as necessary herein.

## DISCUSSION

### I. Other-Acts Evidence

¶6    "[E]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." WIS. STAT. § 904.04(2)(a) (2023-24).[2] However, the rule "does not exclude the evidence when offered for other purposes," including proof of motive or absence of mistake or accident. ***Id.***

¶7    The admission of other-acts evidence is governed by a three-step analytical framework in which we ask whether: (1) the other-acts evidence is offered for an acceptable purpose; (2) the other-acts evidence is relevant; and (3) the probative value of the other-acts evidence is substantially outweighed by the danger of unfair prejudice. ***State v. Sullivan***, 216 Wis. 2d 768, 772-73, 576 N.W.2d 30 (1998).

¶8    Additionally, the legislature in 2014 codified and expanded the "greater latitude" rule. ***State v. Seaton***, 2024 WI App 68, ¶16, 414 Wis. 2d 415, 16 N.W.3d 20, *review denied*, No. 2021AP1399-CR (WI Mar. 13, 2025). The rule provides, in relevant part, that in a criminal proceeding alleging the commission of

---

[1] As noted, Evans was convicted on five charges stemming from two difference cases, and only the convictions in Milwaukee County Circuit Court Case No. 2018CF3599 are before us in this appeal.

[2] All references to the Wisconsin Statutes are to the 2023-24 version.

a serious sex offense, which includes second-degree sexual assault, or a situation involving domestic abuse, "evidence of any similar acts by the accused is admissible[.]" WIS. STAT. § 904.04(2)(b)1. "The rule adds a thumb on the scale of admissibly when considering each prong of the *Sullivan* analysis." *Seaton*, 414 Wis. 2d 415, ¶16.

¶9 The proponent of other-acts evidence has the burden of fulfilling the first two prongs of *Sullivan* by the preponderance of the evidence. *State v. Marinez*, 2011 WI 12, ¶19, 331 Wis. 2d 568, 797 N.W.2d 399. If the proponent is successful, then the burden shifts to the opponent to show that the evidence's probative value is "substantially outweighed by the risk or danger of unfair prejudice." *Id.* We review a trial court's decision to admit other acts evidence for an erroneous exercise of discretion. *Sullivan*, 216 Wis. 2d at 780.

## A. Permissible Purpose

¶10 There are various reasons for which other-acts evidence can be admitted. WIS. STAT. § 904.04(2)(a). The list is illustrative and not exhaustive. *Marinez*, 331 Wis. 2d 568, ¶18. This step is "not demanding" and "is largely meant to develop the framework for the relevancy determination." *Id.*, ¶25. Other-acts evidence "is admissible for any purpose except those purposes that draw the prohibited propensity inference regarding a defendant's character." *Id.*, ¶29.

¶11 At the motion hearing, the State indicated it was seeking to admit the other-acts evidence—three prior sexual assault convictions—as evidence of Evans' modus operandi, intent, and motive. In each prior instance, the State explained, Evans was dating the victim before he argued with them and had forcible penis-to-vagina intercourse with them. In the 1985 case, M.S. "told police

she knew [Evans], they argued and [Evans] took her into his bedroom, closed and locked the door behind him." Evans "pushed her on top of the bed, got on top of her and a struggle ensued." He removed her clothing during the struggle and "without her consent, put his penis in her vagina." In the 1992 case, V.W. had a date with Evans. He came to her house "talking crazy." They argued about going to Chicago. Evans began kissing V.W. When she told him to let her go and pushed him away, Evans "began biting and choking V.W." He also "began to bite her vagina and inserted his fingers into her vagina … [and] put his penis in her vagina without her consent."

¶12    Evans first challenged the State's motion for lack of specificity as to how the evidence was going to be presented to the jury. The State explained it would introduce certified judgments of conviction along with certified criminal complaints and have a detective read them on the stand. Evans countered that the plan sounded like "the epitome" of propensity evidence. The trial court stated that it understood Evans' argument but found that the evidence was being offered for the acceptable purposes of motive, plan, intent, and opportunity.

¶13    In his postconviction motion and on appeal, Evans argues that the other-acts evidence in this case does not fit any of those purposes. However, we agree with the circuit court that the other-acts evidence here was offered for at least one permissible purpose: modus operandi. The similarity of the acts—each assault was made against his adult partner, after an argument, and using physical force—particularly in light of the greater latitude rule, easily supports that purpose. Thus, the State satisfied its burden under the first prong of *Sullivan*.

## B. Relevance

¶14 The second *Sullivan* prong is relevance. *State v. Payano*, 2009 WI 86, ¶67, 320 Wis. 2d 348, 768 N.W.2d 832. The relevance inquiry is two-fold. *State v. Dorsey*, 2018 WI 10, ¶44, 379 Wis. 2d 386, 906 N.W.2d 158. First, the evidence must relate to a fact or proposition of consequence. *Id.* Second, the evidence must have probative value—that is, "a tendency to make a consequential fact more or less probable than it would be without the evidence." *Id.* (citations omitted). "Because other[-]acts evidence is inherently relevant to prove character and therefore a propensity to behave accordingly, 'the real issue is whether the other act is relevant to anything else.'" *State v. Hurley*, 2015 WI 35, ¶76, 361 Wis. 2d 529, 861 N.W.2d 174 (citation omitted).

¶15 Evans asserts that the only real issue in contention was whether L.J. consented to sexual intercourse. He argues that under *State v. Alsteen*, 108 Wis. 2d 723, 730, 324 N.W.2d 426 (1982), other-acts evidence is inadmissible when consent is the only issue.

¶16 In that case, Alsteen was charged with second-degree sexual assault for sexual intercourse with a 15-year-old girl. *Id.* at 725. Alsteen acknowledged having intercourse with the girl but claimed it was consensual. *Id.* at 725-26. The State sought to admit other-acts evidence of another instance of alleged forced sexual intercourse with a different victim. *Id.* at 726. In ruling that the trial court had improperly admitted the other-acts evidence, the supreme court stated that evidence of Alsteen's prior act had "no probative value on the issue of [the girl's] consent" because "[c]onsent is unique to the individual" and "[t]he fact that one woman was raped … has no tendency to prove that another woman did not consent." *Id.* at 730 (citation omitted; ellipses in *Alsteen*).

7

¶17    *Alsteen* notwithstanding, however, where other-acts evidence of non-consent "relates not only to sexual contact but also to a defendant's *modus operandi* … the evidence of non-consent may be admissible to establish motive, intent, preparation, plan, and absence of mistake or accident under WIS. STAT. § 904.04(2)." *State v. Ziebart*, 2003 WI App 258, ¶20, 268 Wis. 2d 468, 673 N.W.2d 369. Further, *Alsteen* was decided without application of the greater latitude rule, because at the time *Alsteen* was decided, the greater latitude rule was almost exclusively applied in cases involving the sexual assault of young children. *See Seaton*, 414 Wis. 2d 415, ¶25.

¶18    Here, the other-acts evidence is relevant to both the issue of consent as well as L.J.'s credibility. Thus, the State successfully met its burden under the second *Sullivan* prong.

## C. Prejudice

¶19    If the proponent of other-acts evidence fulfills its burden on the first two *Sullivan* prongs, the opponent has the burden of showing admission of the evidence is outweighed by the danger of unfair prejudice in order for the evidence to be excluded. *Marinez*, 331 Wis. 2d 568, ¶19. "Unfair prejudice results when the proffered evidence … appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish or otherwise causes a jury to base its decision on something other than the established propositions in the case." *Sullivan*, 216 Wis. 2d at 789-90. The trial court here determined, in both its initial and postconviction decisions, that the probative value of the evidence outweighed the potential of unfair prejudice. We agree.

¶20    First, the other-acts evidence was introduced through very limited testimonial summaries rather than a verbatim reading of victim testimony, and

although the certified complaints and judgments of conviction were marked and admitted as exhibits, the parties agreed that the jury could not view them. Limiting the evidence presented to the jury helps to limit the possibility of unfair prejudice. *See **Hurley***, 361 Wis. 2d 529, ¶89.

¶21 Second, one of the reasons for the greater latitude rule "is the need to corroborate the victim's testimony against credibility challenges." ***State v. Davidson***, 2000 WI 91, ¶40, 236 Wis. 2d 537, 613 N.W.2d 606. "[C]redibility is particularly probative in cases that come down to he-said-she-said." ***Dorsey***, 379 Wis. 2d 386, ¶50.

¶22 Third, the trial court gave cautionary instructions, telling the jury:

> [E]vidence has been presented that the defendant had prior sexual assault convictions.
>
> Although this conduct did occur, you should consider it only on the issues of motive, opportunity, intent, absence of mistake, or accident. You should—you may not consider this evidence to conclude that the defendant has a certain character or certain character trait and that the defendant acted in conformity with that trait or character with respect to the offense charged in this case.

Cautionary instructions help to limit any unfair prejudice that may result from other-acts evidence, ***Hurley***, 361 Wis. 2d 529, ¶89, and a reviewing court presumes that juries comply with properly given cautionary instructions, *see **Marinez***, 331 Wis. 2d 568, ¶41.

¶23 Evans has not shown that any possible unfair prejudice from introduction of his other acts outweighs the probative value of the other-acts evidence. Thus, he has not met his burden under the third ***Sullivan*** prong. Instead, the record adequately supports the trial court's decision to admit the

9

other-acts evidence. The trial court did not err in admitting the other-acts evidence or in denying the postconviction motion.

*II. Use of the Criminal Complaints/Right of Confrontation*

¶24     Though the State initially indicated it would have an officer read from the certified documents relating to Evans' prior acts, it instead called Officer Andrew Wagner to testify and asked him to simply summarize the prior complaints against Evans. The officer testified:

> A. It stated in 1985 an acquaintance or someone that Mark Evans was known to went into—he went into their house or he went into his house to get some kind of residence information. While in the house he locked the door, pushed her on the bed, and forced penis-to-vagina sexual intercourse.
>
> Q. And also as part of those documents was he convicted of third-degree sexual assault?
>
> A. Yes.
>
> ….
>
> A. [As to the 1992 case, Evans] was over meeting a date or someone that was known by—may have known him for two weeks. He offered her to make some easy money or something like that. She refused. He had then—I know he—he had forced his finger into her vagina and also forced penis-to-vagina sexual intercourse. I believe there was some choking involved in this one, and there was biting involved as well.
>
> Q. Was Mr. Evans convicted of two counts of second-degree sexual assault in that case?
>
> A. Yes.

Evans complains that this method violated the hearsay rule of WIS. STAT. § 908.01 and deprived him of the right to confrontation.

¶25 "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." WIS. STAT. § 908.01(3). "Hearsay is not admissible except as provided" by rule or statute. WIS. STAT. § 908.02. "[A] defendant's right to confrontation is violated if the trial court receives into evidence out-of-court statements by someone who does not testify at the trial if those statements are 'testimonial' and the defendant has not had a 'prior opportunity' to cross-examine the out-of-court declarant." *State v. Rodriguez*, 2006 WI App 163, ¶12, 295 Wis. 2d 801, 722 N.W.2d 136 (citation omitted).

¶26 In denying the postconviction motion, the trial court determined that Evans had waived his hearsay and confrontation arguments by not making a contemporaneous objection at trial; "[t]he general rule is that parties waive objections to the admissibility of evidence if they do not object before the trial court." *State v. Kutz*, 2003 WI App 205, ¶27, 267 Wis. 2d 531, 671 N.W.2d 660. Even a claim "of a constitutional right will be deemed waived unless timely raised in the trial court." *State v. Marshall*, 113 Wis. 2d 643, 653, 335 N.W.2d 612 (1983) (citations omitted). We agree with the trial court that these challenges have been waived by Evans' failure to make a timely objection during trial.[3]

### III. Whether the State Failed to Disclose Favorable, Exculpatory Material

¶27 Finally, Evans argues that the State failed to disclose two pieces of material exculpatory evidence: a video that allegedly shows L.J. walking into the

---

[3] As the trial court explained, the lack of objection is more accurately described as forfeiture of the right rather than waiver. *See State v. Ndina*, 2009 WI 21, ¶29, 315 Wis. 2d 653, 761 N.W.2d 612.

11

police station alone despite the fact that she testified she went with her son, and the fact that there is supposedly no record of L.J.'s hospital visit.

¶28 A defendant has a due process right to any favorable evidence that is "material either to guilt or to punishment" that is in the State's possession. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963). This includes any evidence which may impeach one of the State's witnesses. *See Giglio v. United States*, 405 U.S. 150, 154 (1972).

¶29 A *Brady* violation has three components: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must be material. *State v. Wayerski*, 2019 WI 11, ¶35, 385 Wis. 2d 344, 922 N.W.2d 468. We accept the trial court's findings of historical fact unless clearly erroneous but we independently review whether a due process violation has occurred. *State v. Lock*, 2012 WI App 99, ¶94, 344 Wis. 2d 166, 823 N.W.2d 378.

¶30 Evans first asserts that the police station had several video cameras that record 24 hours per day. He says that the recordings are often reviewed by staff for reported and unreported matters and frequently shared between the police and the district attorney's office. He thus contends that after the charging conference, Officer Wagner "had a duty to investigate L.J.'s complaint and learn of any evidence or information known by his own agency regarding this complaint and report his findings to the Assistant District Attorney."

¶31 However, Evans does not establish that the video he seeks existed at the time of the charging conference, so he cannot establish that the video was suppressed: "suppression is nondisclosure or the withholding of evidence from the

defense." ***Wayerski***, 385 Wis. 2d 344, ¶58. The State cannot suppress evidence that does not exist. Evans also does not establish that the video was material. Evidence is not material for ***Brady*** purposes "unless the nondisclosure 'was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict.'" ***Wayerski***, 385 Wis. 2d 344, ¶36 (citation omitted). Evans clearly wanted the video to impeach L.J.'s testimony that she went to the police station with her adult son, which is why she did not immediately report the sexual assault. However, this evidence was presented another way: the officer who took L.J.'s battery report testified it was his recollection that she had come to the station alone. Because the officer testified to the same thing that the video would have shown, the video was immaterial for ***Brady*** purposes.

¶32     Evans also complains the State failed to disclose the absence of a record, specifically, "that there is 'no record' of a hospital visit for L.J.," and that this failure also constituted a ***Brady*** violation. Evans's argument is not well developed and he identifies no supporting, relevant legal authority, but more significantly, this claim is belied by the record. At the start of the trial, the State informed the court that that L.J.'s medical records had been ordered but had not arrived "because there were so many pages." The State cannot withhold records it does not have in its possession. *See **Wayerski***, 385 Wis. 2d 344, ¶35. The State then informed the court that it was prepared to proceed without the records, but it "wanted to make sure that the defense wasn't asking for an adjournment for the medical records." Defense counsel stated that he was also prepared to proceed, and he did so. Therefore, Evans cannot now claim that proceeding in the absence of those records was error, *see **State v. Ndina***, 2009 WI 21, ¶30, 315 Wis. 2d 653, 761 N.W.2d 612, and we are unpersuaded that any ***Brady*** violation occurred.

**CONCLUSION**

¶33    In sum, the trial court properly exercised its discretion in admitting the State's other-acts evidence.  Evans waived his hearsay and confrontation challenges by lack of contemporaneous objection.  Evans has not established that any ***Brady*** violation occurred.  Therefore, the trial court did not err in denying the postconviction motion.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.

14